UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ALISON CAMM, NICOLE FLICK, NORMA CISNEROS, KRYSTAL FORBES,** and **ENZA ZITO**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**REACH FINANCIAL, LLC**,<br><br>Defendant. | Case No. 1:25-cv-01921 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ....- 1 -

FACTUAL BACKGROUND ....- 3 -

A. Reach and Its Website ....- 3 -

B. Google's Business and Online Tracking Tools ....- 3 -

C. Plaintiffs' Interaction with Google's Tracking Tools on Reach's Website ....- 4 -

ARGUMENT ....- 5 -

I. Plaintiffs' State Statutory Claims Fail ....- 6 -

A. Plaintiffs Fail to State a Claim under Section 349 of New York's GBL ....- 6 -

1. Plaintiffs Lack Standing to Bring Their GBL Claim. ....- 6 -

2. Plaintiffs Do Not Allege Materially Misleading Conduct or Actual Injury ....- 7 -

B. California Plaintiffs Fail to Allege Facts Sufficient to Support Their CIPA Claim ....- 8 -

1. California Plaintiffs Cannot Establish That Google Committed an Underlying Violation of Section 631 ....- 9 -

2. California Plaintiffs Fail to Allege That Reach Acted with Knowledge of Google's Purported Criminal Act ....- 10 -

3. California Plaintiffs Fail to Allege That Reach Acted With The Requisite Intent ....- 11 -

II. Plaintiffs Fail to State an ECPA Claim ....- 12 -

A. Reach Was a Party to All of Plaintiffs' Communications with the Website ....- 12 -

B. Plaintiffs Cannot Invoke the Crime-Tort Exception ....- 13 -

1. The Alleged Tortious or Criminal Activities on Which Plaintiffs' Crime-Tort Theory is Based are Not Independent of Reach's Use of The Tracking Tools ....- 15 -

2. Reach Did Not Have a Criminal or Tortious Purpose ....- 15 -

3. The Only Court to Squarely Address Whether an Alleged Violation of the GLBA is Sufficient to Support Crime-Tort Exception Has Held It Does Not ....- 17 -

III. Plaintiffs Fail to Assert Plausible Tort Claims Against Reach Under Their Respective States' Laws ....- 18 -

A. Plaintiffs Fail to Establish an Intrusion Upon Seclusion Claim Against Reach ....- 18 -

1. Reach Could Not Have Intruded Upon Communications to Which It Was a Party ....- 18 -

2. Plaintiffs Cannot Establish the Alleged Intrusion Was "Highly Offensive to a Reasonable Person." ..................................................... - 19 -

B. Plaintiffs Fail to State a Breach of Confidence Claim ..................................... - 21 -

1. There Is No Cause of Action for Breach of Confidence in Illinois or Missouri .......................................................................................... - 21 -

2. The California Plaintiffs' Claim Fails Because the Intercepted Data was Neither Conveyed by Plaintiffs to Reach Nor Was It Novel ......... - 21 -

C. Plaintiffs Have Failed to State a Negligence Claim Against Reach ................. - 22 -

1. Reach Does Not Owe a Legal Duty of Confidentiality to Plaintiffs ..... - 22 -

2. Plaintiffs Did Not Suffer Actual Damages .......................................... - 23 -

IV. Plaintiffs Fail to Assert Plausible Contract or Equitable Claims Against Reach ......... - 25 -

A. Plaintiffs Cannot Assert an Implied Contract Claim Against Reach ................ - 25 -

1. There Is No Binding Agreement Between Plaintiffs and Reach .......... - 25 -

2. Reach's Purported Breach of Implied Contract Did Not Damage Plaintiffs ........................................................................................... - 26 -

B. Plaintiffs Have Failed to Assert a Plausible Claim for Unjust Enrichment ...... - 27 -

CONCLUSION ......................................................................................................... - 28 -

# TABLE OF AUTHORITIES

**Cases** **Page No.**

*Afriyie v. NBCUniversal Media*,
-- F. Supp. 3d --, 2025 WL 962033 (S.D.N.Y. 2025) .......... 27

*Allen v. Quicken Loans Inc.*,
No. 17-cv-12352, 2018 WL 5874088 (D.N.J. Nov. 9, 2018) .......... 14, 15, 16, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100 (2005) .......... 26

*Baker-Rhett v. Aspiro AB*,
324 F. Supp. 3d 407 (S.D.N.Y. 2018) .......... 6

*Barton v. Pret A Manger (USA) Ltd.*,
535 F. Supp. 3d 225 (S.D.N.Y. 2021) .......... 27

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Bennett v. Mallinckrodt, Inc.*,
698 S.W.2d 854 (Mo. App. 1985) .......... 23, 24

*Berman v. Sugo LLC*,
580 F. Supp. 2d 191 (S.D.N.Y. 2008) .......... 25

*Bethlehem Steel Corp. v. United States*,
159 F. Supp. 2d 730 (2001) .......... 21

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 13, 16, 21, 22, 26

*Bovay v. Sears, Roebuck & Co.*,
No. 1-14-2672, 2017 WL 660595 (Ill. App. Jan. 6, 2017) .......... 20

*Brown v. State Farm Mut. Auto. Ins. Co.*,
No. 1:23-cv-06065, 2025 WL 81340 (N.D. Ill. Jan. 13, 2025) .......... 22

*Brown v. USA Taekwondo*,
11 Cal. 5th 204 (2021) .......... 22, 23

*Burnell v. Marin Humane Soc'y*,
No. 14-cv-05635, 2015 WL 6746818(N.D. Cal. Nov. 5, 2015) .......... 23, 24

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .......... 15

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010) .......... 6

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
887 F.3d 803 (7th Cir. 2018) .......... 23

*Cohen v. Casper Sleep Inc.*,
No. 17-cv-9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018)..........................7, 8, 13, 15, 16

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023)........................................................................8

*Cody v. Boscov's, Inc.*,
No. 8:22-cv-01434-SSS-KKX, 2024 WL 2228973 (C.D. Cal. May 6, 2024)..........................9

*Cody v. Lacoste USA*,
No. 8:23-cv-00235, 2024 WL 3761288 (C.D. Cal. July 30, 2024) ..........................................9

*Cooper v. Anheuser-Busch, LLC*,
553 F. Supp. 3d 83 (S.D.N.Y. 2021)........................................................................27

*Corsello v. Verizon N.Y., Inc.*,
967 N.E.2d 1177 (N.Y. App. 2012)........................................................................27, 28

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ........................................................................24

*Dane v. UnitedHealthcare Ins. Co.*,
974 F.3d 183 (2d Cir. 2020)........................................................................5

*Davis v. Facebook, Inc.*,
956 F.3d 589 (9th Cir. 2020) ........................................................................8

*Doe v. Genesis Health Sys.*,
No. 4:23-CV-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)............................ 13, 23

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. Sept. 7, 2023)........................................................................24

*Dwyer v. Allbirds, Inc.*,
598 F. Supp. 3d 137 (S.D.N.Y. 2022)........................................................................27

*Edelman v. Starwood Capital Grp., LLC*,
70 A.D.3d 246 (N.Y. Sup. Ct. 2009) ........................................................................28

*Esparza v. UAG Escondido A1 Inc.*,
No. 23-cv-0102 DMS(KSC), 2024 WL 3761293 (S.D. Cal. Aug. 5, 2024)........................ 10, 11

*Federal Ins. Co. v. Distinguished Props. Umbrella Mgrs.*,
721 F. Supp. 2d 293 (S.D.N.Y. 2010)........................................................................25

*Fiol v. Doellstedt*,
50 Cal. App. 4th 1318 (1996) ........................................................................ 10

*Fogelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ........................................................................24

*Fox v. Cohen*,
406 N.E.2d 178 (Ill. App. 1980) ........................................................................24

*Friedman v. DirecTV*,
262 F. Supp. 3d 1000 (C.D. Cal. 2015) ........................................................................21

*Gehron v. Best Reward Credit Union*,
No. 10-cv-2051–IEG, 2011 WL 976624 (S.D. Cal. Mar. 15, 2011)........................................ 17

*Gusler v. Kawasaki Motors Corp.*,
216 F.3d 1083, 2000 WL 491703 (9th Cir. 2000) ................................................................ 22

*Ham v. Lenovo*,
664 F. Supp. 3d 562 (S.D.N.Y. 2023)..................................................................................... 27

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................................ 19, 20

*Henreid v. Kodner Watkins LC*,
No. 4:23-cv-249 HEA, 2024 WL 5200857 (E.D. Mo. Dec. 23, 2024).................................. 22

*Henson v. Turn, Inc.*,
No. 15-cv-01497, 2018 WL 6605624 (N.D. Cal. Dec. 17, 2018)............................................ 7

*Hubbard v. Google LLC*,
No. 19-cv-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ................................... 19

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
98 N.Y.2d 314 (2002) ............................................................................................................. 6

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)................................................................................. 8, 9

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .................................................................................. 14

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ............................................................................................ 13, 14

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)................................................................................................... 14

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012).................................................................................... 24

*Izquierdo v. Mondelez Int'l., Inc.*,
No. 16-cv-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)........................................... 27

*Jasper & Black, LLC v. Carolina Pad Co.*,
No. 10-cv-3562, 2012 WL 13387967 (S.D.N.Y. Sep. 18, 2012) .......................................... 25

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023).................................................................................. 16

*Kaufman v. Sirius XM Radio, Inc.*,
474 F. App'x 5 (2d Cir. 2012) ................................................................................................ 6

*Koch v. Acker, Merrall & Condit Co.*,
18 N.Y.3d 940 (2012) ............................................................................................................. 7

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) .................................................................................... 21

*Lakes v. Ubisoft, Inc.*,
No. 24-cv-06943-TLT, 2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) .................................... 15

*Lapine v. Seinfeld*,
918 N.Y.S.2d 313 (N.Y. Sup. Ct. 2011) .................................................................................. 26

*Leibowitz v. Cornell Univ.*,
584 F.3d 487 (2d Cir. 2009)...................................................................................................... 25

*Licea v. Finish Line*,
No. 23STCV22390 (Cal. Super. Jul. 10, 2024) ........................................................................ 11

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................................... 19, 22, 24

*Mackey v. Belden, Inc.*,
No. 4:21-cv-00149-JAR, 2021 WL 3363174 (E.D. Mo. Aug. 3, 2021) ................................. 21

*Manning v. Pioneer Sav. Bank*,
55 N.Y.S.3d 587 (N.Y. Sup. Ct. 2016) .................................................................................... 26

*M.B. v. Live Nation Worldwide, Inc.*,
661 S.W.3d 342 (Mo. Ct. App. 2022)....................................................................................... 22

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017) ............................................................................................ 7, 27

*Mount v. PulsePoint, Inc.*,
No. 13-cv-6592, 2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016)................................................. 8

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
537 F.3d 168 (2d Cir. 2008)...................................................................................................... 27

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ............................................................................... 13

*Okash v. Essentia Health*,
No. 23-cv-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024)...................................... 13, 14, 15

*People v. Beeman*,
35 Cal. 3d 547 (1984) ............................................................................................................ 9, 10

*Posner v. Minn. Mining & Mfg. Co.*,
713 F. Supp. 562 (E.D.N.Y.1989) ............................................................................................ 25

*Rider v. Uphold HQ Inc.*,
657 F. Supp. 3d 491 (S.D.N.Y. 2023).................................................................................. 27, 28

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*,
No. 3:24-cv-00382-KDB-SCR, 2025 WL 880538 (W.D.N.C. Mar. 20, 2025)........................ 16

*Rodriguez v. Fountain9, Inc.*,
No. 24STCV04504, 2024 WL 3886811 (Cal. Super. July 9, 2024) ........................................ 24

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ..................................... 16

*R.S. v. Prime Healthcare Servs., Inc.*,
No. 5:24-cv-00330-ODW, 2024 WL 3730609 (C.D. Cal. Aug. 7, 2024) ................................ 13

*Saedi v. SPD Swiss Precision Diagnostics GMBH*,
No. 2:24-cv-06525, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)..................................... 13, 18

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ................................................................................ 16, 20

*Smith v. Chase Manhattan Bank, U.S.A., N.A.*,
741 N.Y.S.2d 100 (N.Y. App. Div. 2002) ................................................................................ 7, 8

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024)................................................................ 8, 9, 10, 11, 12

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........................................................................................ 15

*Swan Media Grp., Inc. v. Staub*,
841 F. Supp. 2d 804 (S.D.N.Y. 2012)........................................................................................ 9

*T.D. v. Piedmont Healthcare, Inc.*,
No. 1:23-cv-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024)................................ 18

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........................................................................................ 19

*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013) ........................................................................................ 14

*Valenzuela v. Kroger Co.*,
No. 2:22-cv-06382-DMG-AGR, 2025 WL 851075 (C.D. Cal. Mar. 13, 2025).................... 9, 11

*Wheeler v. Topps Co.*,
652 F. Supp. 3d 426 (S.D.N.Y. 2023)........................................................................................ 6

*Witz v. Great Lakes Educ. Loan Servs., Inc.*,
No. 19-cv-06715, 2024 WL 4346632 (N.D. Ill. Sept. 30, 2024).............................................22

*Worix v. MedAssets, Inc.*,
857 F. Supp. 2d 699 (N.D. Ill. 2012) ........................................................................................23

*Wright v. Publishers Clearing House, Inc.*,
439 F. Supp. 3d 102 (E.D.N.Y. 2020) ........................................................................................ 6, 7

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................................................................ 19

**Statutes** **Page No.**

15 U.S.C. § 6821 ........................................................................................ 17

18 U.S.C. § 2511(1) ........................................................................................ 12

18 U.S.C. § 2511(2)(d)........................................................................................ 12

N.Y. GEN. BUS. LAW § 349(a) ........ 6
CAL. PEN. CODE § 631(a) ........ 8

Defendant Reach Financial, LLC, by and through undersigned counsel, hereby moves to dismiss Plaintiffs' Class Action Complaint.

## PRELIMINARY STATEMENT

Plaintiffs' lawsuit arises from Reach's use of analytical and advertising tools provided by Google, "the largest digital advertiser in the country," on www.reach.com (the "Website"). Plaintiffs allege that by using these tools, Reach enabled Google to collect Reach's determination of whether to approve or deny their debt consolidation loan applications. Plaintiffs do not allege, however, that Reach provided Google their loan application determination together with any personally identifiable information. Rather, they claim that Google—using a cookie it had previously installed on Plaintiffs' web browsers—was capable of correlating that information on its own.

Plaintiffs assert that Reach's use of Google's tools on its Website violates various state and federal statutes, including the New York General Business Law § 349 (GBL), the California Invasion of Privacy Act (CIPA), and the Electronic Communications Privacy Act (ECPA). Plaintiffs also assert various common law claims, including intrusion upon seclusion, breach of confidence, negligence, breach of implied contract, and unjust enrichment.[1]

The Court should dismiss all claims with prejudice.

[1] During the May 28, 2025 hearing, Plaintiffs' counsel confirmed that Plaintiffs were abandoning (1) their California Unfair Competition Law claim (Count IX), and (2) the intrusion upon seclusion claims brought by the Illinois and Missouri Plaintiffs (Count I). Accordingly, the Court should dismiss those claims with prejudice.

Plaintiffs' cause of action under the New York GBL fails because they are not New York residents and have not established any connection between their claims and New York sufficient to confer statutory standing.

The California Plaintiffs' aiding and abetting claim under CIPA fails because they have not alleged that Reach knew about, and intended to facilitate, any wiretapping violation purportedly perpetrated by Google.

Plaintiffs' claim under CIPA's federal counterpart, the ECPA, also fails for lack of allegations establishing that Reach intercepted any of Plaintiffs' communications "for the purpose of" committing a crime or tort, let alone one that is independent of Reach's use of Google's tools on the Website.

Plaintiffs' common law tort theories also miss the mark.

Plaintiffs cannot recover under a claim for intrusion upon seclusion because (1) Reach could not have intruded upon communications to which it was a party, and (2) Plaintiffs cannot plausibly allege that any ostensible "intrusion" resulting from the use of Google's tools would be "highly offensive to a reasonable person."

Plaintiffs' breach of confidence claim fails because (1) neither Illinois nor Missouri recognizes a cause of action for breach of confidence under the circumstances alleged, and (2) California requires the information conveyed in confidence to be both private and novel, plus Plaintiffs have not alleged that Reach disclosed any novel information.

Similarly, Plaintiffs' negligence claim fails because Reach did not have a duty to maintain the confidentiality of information voluntarily provided to it, and because the breach of any ostensible duty did not cause them actual damages.

Plaintiffs' implied contract claim fails because (1) the Complaint does not allege facts sufficient to satisfy all the elements required to form a binding agreement between Reach and Plaintiffs, and (2) Plaintiffs do not allege that they suffered cognizable damages.

Finally, Plaintiffs' unjust enrichment claim fails because it is based on the same set of facts underlying their other claims and, thus, adequate legal remedies are available.

## FACTUAL BACKGROUND[2]

### A. Reach and Its Website

Reach is a Delaware limited liability company with its principal place of business in New York. Compl. ¶ 44. It owns and operates the Website, on which users can "fill out an application for [Reach's] debt consolidation loans and receive an instant determination on whether their application has been accepted." *Id.* ¶¶ 9–10.

### B. Google's Business and Online Tracking Tools

Google offers all "website operators" a "proprietary suite[] of marketing, advertising, and customer analytics" tools, including "Google Analytics, Google AdSense, and Google Tag Manager" (collectively, the "Business Tools"). *Id.* ¶ 5.

"Google advertises Google Analytics and other Business Tools to website operators, like [Reach], claiming they will allow the operator to "[u]nderstand [their] site and app users," "check the performance of [their] marketing," and "[g]et insights only Google can give." *Id.* ¶ 52.

---

[2] For purposes of this motion only, Reach accepts as true all of Plaintiffs' non-conclusory allegations. Reach reserves (1) its right to refute such allegations should the case proceed to discovery, and (2) its right to seek appropriate relief from the Court should it be determined that Plaintiffs alleged facts they knew, based on Reach's voluntary pre-motion disclosures, lacked a good faith basis in fact.

To access Google's Business Tools, Google requires website operators to install Google's "Tracking Tools" on their websites. *Id.* ¶¶ 6, 8, 52, 62. Most websites utilize Google's Tracking Tools. *See id.* ¶ 57 ("Google trackers are present on 74-percent of all web traffic.").

Google discloses to Google accountholders—including "on its Privacy & Terms page"—that third party websites using Google's services (like Reach's) may "share information with Google." *Id.* ¶ 53 (citing *Privacy & Terms – How Google Uses Information From Sites or Apps That Use Our Services,* https://policies.google.com/technologies/partner-sites (last visited July 2, 2025) [hereinafter "*Google Privacy & Terms*"]).

Google also discloses that it may "use[] the information collected from third party websites" to "sell targeted advertising," but **only if** the Google accountholder's "ad personalization" is **turned on**. *Id.* ¶ 54 (citing *Google Privacy & Terms*). If the Google accountholder has ad personalization turned off, Google does **not** "collect or use [that user's] information to create an ad profile or personalize the ads Google shows [the user]." *Id.*

Plaintiffs allege that Reach configured Google's Tracking Tools on its Website to capture (1) "information about the user's device and browser, such as their screen resolution, time zone setting, browser software type and version, operating system type and version, language setting, and IP address," and (2) Reach's loan determination (*i.e.*, "whether that loan was approved or denied"). *Id.* ¶¶ 3, 82–83.

### C. Plaintiffs' Interaction with Google's Tracking Tools on Reach's Website

Plaintiffs Flick and Camm are California residents; Plaintiffs Cisneros and Forbes are Illinois residents; and Plaintiff Zito is a Missouri resident. *Id.* ¶¶ 14, 20, 26, 32, 38. None of the Plaintiffs reside in, or allege any connection to, New York.

Each of the Plaintiffs "possessed an account with Google" and "accessed [Reach]'s Website while logged into her Google account on the same device," where they filled out applications for debt consolidation loans. *Id.* ¶¶ 15–42.

Prior to Plaintiffs' visits to the Website, Google installed one of its cookies on their devices' web browsers with information Google could purportedly use to identify their "Google account[s], along with other information that is commonly used to create a browser fingerprint, such as the user's language preference, screen resolution, browser software and version, and operating system software and version." *Id.* ¶¶ 69, 70, 81. Plaintiffs do not indicate whether their Google account's "ad personalization" setting was toggled on when they visited the Website.

Upon filling out an application on the Website, Plaintiffs allege Google intercepted their device information and loan application determination. *See id.* ¶¶ 3, 69–77, 80–83. Plaintiffs do not specifically allege, however, that Google intercepted any information they affirmatively communicated to the Website—such as their name, address, or related information—while completing their applications.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, Plaintiffs' allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations. *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020) (cleaned up).

## I. <u>Plaintiffs' State Statutory Claims Fail.</u>

### A. Plaintiffs Fail to State a Claim under Section 349 of New York's GBL.

Despite lacking any meaningful connection to New York, Plaintiffs assert a claim against Reach under New York's GBL, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GEN. BUS. LAW § 349(a) [hereinafter, "Section 349"]. The Court should dismiss Plaintiffs' GBL claim because (1) they lack standing to bring it, and (2) they have not alleged that Reach engaged in any GBL-proscribed acts.

*1. <u>Plaintiffs Lack Standing to Bring Their GBL Claim</u>.*

Section 349 has limited reach: It applies only to "the deception of a consumer [that] occur[s] in New York." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325 (2002); *Baker-Rhett v. Aspiro AB*, 324 F. Supp. 3d 407, 416–17 (S.D.N.Y. 2018) (acknowledging the settled rule that "Section[] 349 . . . contain[s] a territoriality requirement" (internal quotations omitted)).

To have standing to bring a GBL claim, a plaintiff must allege that he or she did more than merely transact business with a New York resident. *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 109–12 (E.D.N.Y. 2020) (holding it is "well-settled" that a consumer "does not have standing to bring a Section 349 claim just because he or she transacted with a seller who resides in New York" (citing *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7 (2d Cir. 2012))). Indeed, for cases involving online businesses, courts have "consistently reject[ed]" attempts to bring GBL claims "based solely on an out-of-state customer's interacting with a website controlled in New York." *Wheeler v. Topps Co.*, 652 F. Supp. 3d 426, 430–32 (S.D.N.Y. 2023) (listing cases); *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 403 (S.D.N.Y. 2010) (dismissing GBL claim arising from online hotel reservations the plaintiffs "made and paid for" from "their respective home states").

In this case, Plaintiffs' GBL claim arises solely from their visits to Reach's Website to apply for debt consolidation loans. None of the Plaintiffs reside in New York or have any meaningful connection to the State. Nor do any of the Plaintiffs claim they used the Website while visiting New York or that they were attempting to purchase some New York-specific service or product. Rather, the only connection Plaintiffs allege between their GBL claim and New York is that the owner of the Website, Reach, happens to reside there. Compl. ¶ 44. Without any meaningful connection to New York, Plaintiffs lack standing to assert a GBL claim.

*2. Plaintiffs Do Not Allege Materially Misleading Conduct or Actual Injury.*

To state a Section 349 claim, a plaintiff must allege that the defendant engaged in "materially misleading" conduct that caused the plaintiff to suffer an "actual injury." *Wright*, 439 F. Supp. 3d at 109–12 (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (internal quotations omitted)); *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 35 (2d Cir. 2017).

In this case, Plaintiffs fail to allege that Reach engaged in any materially misleading conduct. Rather, they merely allege that Reach disclosed their "sensitive information" to Google through the Tracking Tools on its Website, in exchange for Google's marketing and advertising services, with the "intent" to mislead Plaintiffs. Compl. ¶ 208. Given the absence of allegations that Reach engaged in conduct which did, in fact, mislead Plaintiffs into believing that Reach would not use Tracking Tools on its Website, Plaintiffs' GBL claim fails.

Even if Plaintiffs had alleged that Reach engaged in prohibited conduct, their GBL claim would still fail because New York courts consistently hold that "similar invasion-of-privacy allegations do not meet the [General Business Law]'s injury requirement." *Cohen v. Casper Sleep Inc.*, No. 17-cv-9325, 2018 WL 3392877, at *8 (S.D.N.Y. July 12, 2018) (gathering cases); *see also, e.g.*, *PulsePoint, Inc.*, 684 F. App'x at 35; *Henson v. Turn, Inc.*, No. 15-cv-01497, 2018 WL 6605624, at *3–4 (N.D. Cal. Dec. 17, 2018); *Smith v. Chase Manhattan Bank, U.S.A., N.A.*, 741

N.Y.S.2d 100, 102 (N.Y. App. Div. 2002). In those cases, the courts rejected the plaintiffs' contentions that merely alleging a defendant "surreptitiously collect[ed] [browsing history] information" is sufficient to meet GBL's actual injury requirement. *Cohen*, 2018 WL 3392877 at *8 (citing *Mount v. PulsePoint, Inc.*, No. 13-cv-6592, 2016 WL 5080131, at *11 (S.D.N.Y. Aug. 17, 2016)). Because Plaintiffs rely on similar allegations here, the Court should dismiss their GBL claim.

### B. California Plaintiffs Fail to Allege Facts Sufficient to Support Their CIPA Claim.

Section 631(a) of CIPA imposes criminal and civil penalties for injuries resulting from: (1) intentionally wiretapping, or making an unauthorized connection, with any telegraph, telephone wire, line, cable, or instrument; (2) willfully reading the "contents or meaning" of a communication in transit over a wire without all parties' consent; (3) attempting to use or communicate information obtained as a result of engaging in either of the previous two activities; or (4) aiding and abetting "any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." CAL. PEN. CODE § 631(a) [hereinafter, "Section 631(a)"]; *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 940 (N.D. Cal. 2024); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021). California Plaintiffs acknowledge in their Complaint that Reach was the intended recipient of their communications with the Website, Compl. ¶¶ 214, 216, limiting the theory under which they can bring a claim against Reach to aiding and abetting. *See Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) ("The statute exempts from liability any individual or entity who is a 'party' to the 'communication,' so that one participant in a conversation cannot be held to have wiretapped another." (citing *Davis v. Facebook, Inc.*, 956 F.3d 589, 607 (9th Cir. 2020)).

To maintain a claim for aiding and abetting, California Plaintiffs must allege facts establishing (1) an underlying violation by a third party (here, Google), and (2) that the alleged aider

and abettor (here, Reach) both had "knowledge of" the third-party's unlawful conduct and "act[ed] with the third party ***in order to*** have the third party perform acts that violate the statute." *YETI Coolers*, 754 F. Supp. 3d at 942 (emphasis in original); *People v. Beeman*, 35 Cal. 3d 547, 560 (1984) (holding the plaintiff must establish that the defendant "act[ed] with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense."); *Valenzuela v. Kroger Co.*, No. 2:22-cv-06382-DMG-AGR, 2025 WL 851075, at *3 (C.D. Cal. Mar. 13, 2025) (affirming Section 631(a)'s scienter requirement). Plaintiffs' allegations fail to satisfy either of these elements.

*1.* *<u>California Plaintiffs Cannot Establish That Google Committed an Underlying Violation of Section 631</u>.*

California Plaintiffs' aiding and abetting claim is, by its very nature, derivative—meaning that in the absence of non-conclusory allegations sufficient to establish that Google committed one of the acts proscribed by Section 631(a)'s first three provisions, there is no unlawful conduct for Reach to aid and abet. *See Graham*, 533 F. Supp. 3d at 833 (holding the defendant not liable for aiding and abetting the third party advertiser's wrongdoing "because there [was] no wrongdoing"); *Cody v. Boscov's, Inc.*, No. 8:22-cv-01434-SSS-KKX, 2024 WL 2228973, at *2 (C.D. Cal. May 6, 2024) ("In order to sustain [an aiding and abetting] claim, Plaintiff must adequately plead that [the third party] itself engaged in conduct falling under one of the first three prongs of the statute."); *Cody v. Lacoste USA*, No. 8:23-cv-00235, 2024 WL 3761288, at *2 (C.D. Cal. July 30, 2024) (same).

Although California Plaintiffs repeatedly declare that Google acted "unlawfully," they do not support those conclusory allegations with substantiating facts. *See Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (finding that the court "is not bound to accept as true a legal conclusion couched as a factual allegation"). Nor do they point to a single legal

authority that has definitively found that the use of Tracking Tools violates Section 631(a). Because California Plaintiffs have failed to allege facts sufficient to establish that Google violated CIPA, their aiding and abetting claim against Reach is necessarily foreclosed.

2. *California Plaintiffs Fail to Allege That Reach Acted with Knowledge of Google's Purported Criminal Act.*

Even if Plaintiffs could plausibly allege that Google violated Section 631(a), their aiding and abetting claim against Reach would still be subject to dismissal because the Complaint lacks allegations to establish that Reach installed the Tracking Tools with requisite knowledge of Google's purported criminal purpose. *See Beeman*, 35 Cal. 3d at 560; *see also Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102 DMS(KSC), 2024 WL 3761293, at *2 (S.D. Cal. Aug. 5, 2024) ("Under aiding and abetting principles of criminal law, liability under [CIPA's aiding and abetting provision] could only arise if the defendant ***knew*** the perpetrator intended to commit the crime and ***intended*** to aid and abet the perpetrator in committing the crime." (emphasis in original)); *id.*, at *6 (holding in a civil action that, because CIPA "does not define these terms or the broader concept of 'aiding and abetting[,]" courts must look to "the common law definition of aiding and abetting" to assess whether a plaintiff satisfies the statute's scienter requirement (quoting *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325 (1996)).

As multiple federal and state courts have held in this precise context, generalized allegations that a defendant installed and benefited from tracking technologies on its website are not enough to satisfy the knowledge requirement for an aiding and abetting claim under Section 631(a). *See, e.g., YETI Coolers*, 754 F. Supp. 3d at 942 ("By its plain terms, that statutory language does not cover, for example, a defendant who properly and lawfully provides information or access to a third party without any knowledge or intent that the third party will use the information in a manner that violates the statute."); *Licea v. Finish Line*, No. 23STCV22390 (Cal. Super. Jul. 10, 2024) (dismissing

Section 631(a) claim because plaintiff failed to adequately allege that the defendant acted with the requisite knowledge and intent) (attached as Exhibit A); *Esparza*, 2024 WL 3761293, at *2 (same); *Valenzuela*, 2025 WL 851075, at *3 (same).

Nevertheless, California Plaintiffs base their CIPA claim on generalized allegations that Reach used the Tracking Tools to get access to the benefits offered by Google's Business Tools. *See* Compl. ¶¶ 52, 96–97, 214, 217. Plaintiffs do not allege facts sufficient to establish that Reach knew that Google—one of the most prominent website marketing services in the world, according to Plaintiffs—would use its Tracking Tools unlawfully. *See id.* ¶¶ 51–54, 57. To the contrary, Plaintiffs allege that Reach agreed to configure the Website so that Google could collect data ***for marketing purposes***. *Id.* ¶¶ 5, 96. There is nothing inherently illegal about that.

As other courts have found, the mere fact that a business has utilized one of the most commonly used and successful marketing products in the world cannot—as a matter of law—allow for a plausible inference that a defendant acted with the knowledge required to maintain a claim for aiding and abetting. *See YETI Coolers*, 754 F. Supp. 3d at 943 (holding that it was not plausible to "infer from Defendant's use of [a third party's] services alone that Defendant knew [the third party's] services were based on its allegedly illegal interception of financial information"); *Finish Line*, No. 23STCV22390, at pp. 5–6 (holding that a third party's marketing of its tracking technology's capabilities was not sufficient to demonstrate that a defendant using the tracking technology "knew, let alone facilitated" a violation of Section 631(a)).

*3. <u>California Plaintiffs Fail to Allege That Reach Acted With The Requisite Intent.</u>*

Separate and apart from the knowledge element, Plaintiffs must also allege facts sufficient to establish that Reach installed the tracking technologies on its Website "***in order to***" enable Google's violation of CIPA. *See id.* (dismissing Section 631(a) claim for lack of allegations that the

defendant "facilitated" the third-party advertiser's alleged misconduct). The Complaint is devoid of such allegations.

Indeed, Plaintiffs specifically allege that Reach installed the Tracking Tools on its Website to avail itself of the technologies' purported benefits, such as "[u]nderstand[ing] [their] site and app users," and "check[ing] the performance of [their] marketing," Compl. ¶ 52—allegations other federal courts have held are not sufficient to support an aiding and abetting claim. *See, e.g.*, *YETI Coolers*, 754 F. Supp. 3d at 944.

For any of these reasons, California Plaintiffs' CIPA claim should be dismissed.

## II. Plaintiffs Fail to State an ECPA Claim.

Plaintiffs claim that Reach's alleged use of Google's ubiquitous Tracking Tools on its Website violates the ECPA, which prohibits the intentional and unauthorized interception of "any wire, oral, or electronic communication" without the consent of at least one party to the communication. *See* 18 U.S.C. § 2511(1). A "party" to a communication is exempt from liability under the ECPA unless the party intercepted the communication "***for the purpose of*** committing any criminal or tortious act," 18 U.S.C. § 2511(2)(d) (emphasis added). This narrowly construed exception to the ECPA's one-party consent requirement is known as the "crime-tort exception."

Plaintiffs cannot state a viable ECPA claim against Reach because: (A) Reach was an intended party to Plaintiffs' communications with the Website, and (B) Plaintiffs have not alleged facts sufficient to establish that Reach added the Tracking Tools to its Website "for the purpose of" committing any independent crime or tort such that the crime-tort exception might apply.

### A. Reach Was a Party to All of Plaintiffs' Communications with the Website.

As a preliminary matter, there is no dispute that Reach, as the owner of the Website, was an intended recipient of Plaintiffs' communications. *See* Compl. ¶ 214 (alleging that Google "eavesdrop[ped] on and intercept[ed] in real time" the Plaintiffs' "private communications ***with***

***Defendant***" (emphasis added)). "[T]he intended recipient of a communication is necessarily one of its parties." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015) [hereinafter, "*Google Cookie*"]; *see R.S. v. Prime Healthcare Servs., Inc.*, No. 5:24-cv-00330-ODW, 2024 WL 3730609, at *2–3 (C.D. Cal. Aug. 7, 2024) (dismissing the plaintiff's ECPA claim with prejudice because the defendant, "as the party that 'installed tracking technologies on its Web properties,' … necessarily consented to the use of those pixels and the 'interception' of the communications") (internal citations omitted). Thus, unless Plaintiffs sufficiently invoke the crime-tort exception, Plaintiffs' ECPA claim fails as a matter of law. *See, e.g.*, *Saedi v. SPD Swiss Precision Diagnostics GMBH*, No. 2:24-cv-06525, 2025 WL 1141168, at *14 (C.D. Cal. Feb. 27, 2025).

**B. Plaintiffs Cannot Invoke the Crime-Tort Exception.**

To assert a viable claim against a party to a communication based on the crime-tort exception, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording or interception itself." *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1094–96 (W.D. Wash. 2024) (quoting *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064–65 (C.D. Cal. 2024) (internal quotations omitted)); *see also Cohen*, 2018 WL 3392877 at *4 ("[T]he intended tort must be independent of the act of recording itself—the tort cannot be the act of interception." (internal quotations omitted)); *Doe v. Genesis Health Sys.*, No. 4:23-CV-04209-JEH, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) (holding plaintiff must plead facts sufficient to establish defendants "knew its acts were in violation" of the law).

To satisfy that pleading standard, a plaintiff must show that the "primary motivation" or "determining factor" of the defendant's actions was to tortiously injure the plaintiff. *Saedi*, 2025 1141168 at *13. "In other words, the bad acts must be 'secondary to the acquisition of the communication' and involve 'tortious or criminal use of the interception's fruits.'" *Okash v. Essentia*

*Health*, No. 23-cv-482, 2024 WL 1285779, at *3–5 (D. Minn. Mar. 26, 2024) (quoting *Google Cookie*, 806 F.3d at 145); *see also United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (confining the crime-tort exception to "instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party"); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 512–13 (S.D.N.Y. 2001) ("Section 2511(2)(d)'s legislative history and case law make clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort.").

In this case, Plaintiffs attempt to invoke the crime-tort exception based on: (1) a generic reference to Reach's alleged violation of state statutes and commission of certain torts (specifically, Counts I, II, IV, VII, VIII, and IX of the Complaint), and (2) an alleged violation of Title V the Gramm-Leach-Bliley Act ("GLBA"). *See* Compl. ¶¶ 195–96. Plaintiffs' allegations fall short under the governing law for at least three reasons.

First, "the alleged tortious or criminal activities are not independent from the intentional act of intercepting; they are the interception itself." *Allen v. Quicken Loans Inc.*, No. 17-cv-12352, 2018 WL 5874088, at *6 (D.N.J. Nov. 9, 2018).

Second, "there [are] 'no facts pleaded to indicate that the interceptions in this case were motivated by anything other than [Reach's] desire to monetize Plaintiffs' [use of Reach Website],'" and thus the ECPA's crime-tort exception "is inapplicable." *Id.* (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275–76 (3d Cir. 2016)).

And third, the only court to have considered whether an alleged GLBA violation is sufficient to invoke the crime-tort exception held, under a similar set of facts, that it is not. *Id.*

1. *The Alleged Tortious or Criminal Activities on Which Plaintiffs' Crime-Tort Theory is Based are Not Independent of Reach's Use of The Tracking Tools.*

As an initial matter, all the crimes and torts on which Plaintiffs rely to support their ECPA claim are based on Reach's use of Google's Tracking Tools on its Website. *See, e.g.*, Compl. ¶¶ 195–97. Because Plaintiffs do not allege that Reach engaged in any crime or tort that arose from acts ***secondary to*** Reach's alleged use of such tools or Google's purported interception of Plaintiffs' communications on the Website, they cannot invoke the ECPA's crime-tort exception here. *See, e.g.*, *Quicken Loans*, 2018 WL 5874088 at *6; *Cohen*, 2018 WL 3392877 at *4; *Okash*, 2024 WL 1285779 at *3; *Caro v. Weintraub*, 618 F.3d 94, 101 (2d Cir. 2010).

2. *Reach Did Not Have a Criminal or Tortious Purpose.*

Even assuming Plaintiffs could establish that Reach's use of Google's Tracking Tools gives rise to sufficiently independent crimes or torts, nowhere in their Complaint do Plaintiffs allege Reach used the Tracking Tools "***for the purpose of***" committing any such crime or tort, let alone with the "primary motivation" of injuring Plaintiffs. *See, e.g.*, *Cohen*, 2018 WL 3392877 at *4 (holding that, without a "tortious purpose," the "commission of a crime or tort alone does not create liability"); *Lakes v. Ubisoft, Inc.*, No. 24-cv-06943-TLT, 2025 WL 1036639, at *7 (N.D. Cal. Apr. 2, 2025) (holding that "focus is not upon whether the interception itself violated another law" but rather whether "the purpose for the interception—its intended use—was criminal or tortious" (quoting *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)).

To the contrary, Plaintiffs explicitly concede that Reach used the Tracking Tools for the purpose of receiving the marketing and business-level benefits that Google offers, Compl. ¶¶ 15, 21, 27, 33, 39, and that Google used data allegedly intercepted by the Tracking Tools to "sell targeted advertising" and "for financial gain," *id.* ¶¶ 54, 200. These allegations do not support an application of the ECPA's crime-tort exception, which courts in the Second Circuit "construe[] narrowly."

*Cohen*, 2018 WL 3392877 at *3. *See also Quicken Loans*, 2018 WL 5874088 at *7; *Roberts v. Charlotte Mecklenburg Hosp. Auth.*, No. 3:24-cv-00382-KDB-SCR, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025) (holding that even if defendant violated HIPAA, plaintiffs could not invoke the crime-tort exception absent allegations that defendant "did so for the ***purpose*** of committing a criminal or tortious act" (emphasis in original)); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (rejecting application of the crime-tort exception where defendant's "purpose ha[d] plainly not been to perpetuate torts on millions of Internet users, but to make money" (quoting *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021)); *Eisenhower Med. Ctr.*, 721 F. Supp. 3d at 1065 (allegation that defendant engaged in "allegedly illegal interception" for "commercial advantage" not sufficient to support crime-tort exception). Since none of Reach's alleged purposes for using the Tracking Tools are inherently criminal or tortious, the crime-tort exception does not apply.

Most courts analyzing the applicability of the ECPA's crime-tort exception under similar circumstances, such as those cited above, have declined to apply it. While there are a small number of cases summarily holding otherwise, those cases have no persuasive force. For example, in *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1056 (N.D. Cal. 2025), the court disposed of the crime-tort argument in just two-sentences by accepting as true a single allegation in the plaintiff's 421-paragraph complaint which recited, in a conclusory manner, that the defendant "intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts." *Id.* at 1053 (citing ¶ 380 of plaintiff's complaint). Reach respectfully submits that this Court should look to the numerous cases with well-reasoned decisions and disregard summary outliers such as *Shah*.

3. <u>*The Only Court to Squarely Address Whether an Alleged Violation of the GLBA is Sufficient to Support Crime-Tort Exception Has Held It Does Not.*</u>

Plaintiffs in other cases rarely invoke the GLBA as grounds for applying the ECPA's crime-tort exception—likely because, under the circumstances alleged, the GLBA violation is neither a tort nor a crime. *See Gehron v. Best Reward Credit Union*, No. 10-cv-2051–IEG, 2011 WL 976624, at *2 (S.D. Cal. Mar. 15, 2011) (no private right of action); 15 U.S.C. § 6821 (limiting criminal penalties to violations not at issue here).

Indeed, to date, it appears only one court has addressed whether an alleged GLBA violation provides sufficient support for the crime-tort exception, and that was in *Allen v. Quicken Loans*. The court in that case rejected the plaintiff's reliance on the GLBA for two reasons. The court first found that the alleged wiretap was not independent, or done for the purpose, of violating the GLBA. 2018 WL 5874088, at *7. The court then independently held that the plaintiff, who "never procured financial services from Quicken," had failed to adequately allege that he was a "consumer" under the GLBA or that the allegedly intercepted information was "provided by a consumer to a financial institution," rendering the GLBA inapplicable. *Id.*

This case is on all fours with *Quicken*. Plaintiffs do not allege that they ever procured financial services from Reach and thus are not "consumers" under the GLBA. Even if they were, the GLBA still would not apply because the allegedly intercepted information—*i.e.*, Reach's loan determination—was not "provided by" Plaintiffs to Reach, but rather was information Reach generated and provided to Plaintiffs, taking it outside the bounds of the GLBA's definition of "nonpublic personal information." Thus, consistent with the only on-point decision in *Quicken*, Plaintiffs' GLBA allegations do not support the ECPA's crime-tort exception.

## III. <u>Plaintiffs Fail to Assert Plausible Tort Claims Against Reach Under Their Respective States' Laws.</u>[3]

### A. Plaintiffs Fail to Establish an Intrusion Upon Seclusion Claim Against Reach.

Plaintiffs base their intrusion upon seclusion claim on Reach's alleged disclosure of their "sensitive information" to Google through the Tracking Tools on the Website. *See* Compl. ¶¶ 11–12, 131–36. Their claim fails because: (1) Reach was an intended recipient of Plaintiffs' communications and, thus, could not have intruded upon them; and (2) the intrusion Plaintiffs allege is not, under any of the pertinent states' laws, "highly offensive."

#### *1. Reach Could Not Have Intruded Upon Communications to Which It Was a Party.*

To state an intrusion upon seclusion claim, Plaintiffs must allege that Reach intruded upon Plaintiffs' private communications. *See, e.g.*, *Saedi*, 2025 WL 1141168 at *6 (holding that it is the defendant's intrusion, not use of the data, that gives rise to intrusion upon seclusion claim).

Here, Plaintiffs acknowledge that Reach did not intrude upon their communications with the Website but, instead, Reach was an intended party to such communications. *See, e.g.*, Compl. ¶¶ 19, 25, 27, 31, 37, 43. Plaintiffs base their claim, instead, on Reach's use of Google's Tracking Tools which enabled Google to intercept Plaintiffs' communications. Even accepting Plaintiffs' allegations as true, the "only plausible conclusion" supported by the Complaint "is that the allegedly harmful intrusion here, if any, was accomplished by third parties"—not Reach. *Saedi*, 2025 WL 1141168, at *6; *see also T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-cv-5416-TWT, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024) ("There is no intrusion upon privacy when a

---

[3] The Parties have stipulated that, for purpose of deciding this Motion, the Court should apply the law of Plaintiffs' home states to Plaintiffs' common law tort claims and New York law to Plaintiffs' implied contract and unjust enrichment claims. *See* Dkt. 18.

patient voluntarily provides personally identifiable information and protected health information to his or her healthcare provider."). Accordingly, Plaintiffs' intrusion upon seclusion claim fails.

### 2. *Plaintiffs Cannot Establish the Alleged Intrusion Was "Highly Offensive to a Reasonable Person."*

Even if Plaintiffs could allege facts sufficient to establish that Reach improperly intruded upon their private communications, their claim would still fail because, under California law, they must also allege that the intrusion was "highly offensive to a reasonable person." *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022).

Courts are generally in agreement that a website owner's "data collection and disclosure to third parties is 'routine commercial behavior'" and, thus, "not a 'highly offensive' intrusion of privacy." *Id.* (quoting *Low v. LinkedIn Corp*., 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) ("[C]ourts have been less willing to find that users have a cognizable privacy interest in browsing data collected only while users interact with the website of the defendant company.").

One reason for this commonsense conclusion is that "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." *Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)).

Another reason is that, with few exceptions, the sort of information websites typically collect is not "private," let alone "highly offensive." Indeed, "[e]ven disclosure of highly personal information such as social security numbers is not 'highly offensive.'" *Hammerling*, 615 F. Supp. 3d at 1090 (citing *Low*, 900 F. Supp. 2d at 1025) ("general information about a user's religion, political affiliation, or sexual preference" not sufficiently private to support intrusion upon

seclusion claim); *Shah*, 768 F. Supp. 3d at 1047 (holding that allegations the defendant "disclosed personal information in the form of employment information, bank account information, and their eligibility for preapproval or approval for a credit card . . . did not rise to the level of an 'egregious breach of social norms'").

Plaintiffs' intrusion upon seclusion claim is based on Reach's alleged configuration of the Tracking Tools to collect "routine user behavior," such as clicks on a link on the Website and the "determination of whether a user's loan application should be approved or denied." Compl. ¶ 83. Plaintiffs admit, as an initial matter, that use of Google's Tracking Tools to collect browsing data is ubiquitous, and that Reach had legitimate commercial reasons for using the tools. *See* Compl. ¶¶ 51–52, 57. That concession, alone, proves fatal to Plaintiffs' claim because engaging in "'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling*, 615 F. Supp. 3d at 1090 (citations omitted).

However, even if Plaintiffs could allege that Reach used the Tracking Tools in a non-routine manner, their claim would still fail because the information Reach allegedly configured the Tracking Tools to intercept—specifically, their binary loan application outcome—is information in which Plaintiffs had no legitimate, legally-recognized expectation of privacy. *See, e.g.*, *Bovay v. Sears, Roebuck & Co.*, No. 1-14-2672, 2017 WL 660595, at *3, *12 (Ill. App. Jan. 6, 2017) (holding that disclosure of plaintiff's "financial data such as credit card numbers and cardholder account balances" was not "facially revealing, compromising or embarrassing").

Because Plaintiffs' allegations concerning the type of information collected and manner of collection do not rise to the level of "highly offensive," their intrusion upon seclusion claim fails.

**B. Plaintiffs Fail to State a Breach of Confidence Claim.**

*1. There Is No Cause of Action for Breach of Confidence in Illinois or Missouri.*

Neither Illinois nor Missouri recognizes a breach of confidence cause of action under the circumstances alleged here. *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 845 (N.D. Ill. 2023) ("As far as the Court is aware, a common law cause of action for breach of confidentiality remains unavailable in Illinois[.]"); *Mackey v. Belden, Inc.*, No. 4:21-cv-00149-JAR, 2021 WL 3363174, at *9 (E.D. Mo. Aug. 3, 2021) ("[U]nder Missouri law breach of confidence claims are clearly limited to disclosure or communication of trade secrets or other confidential business information"). Thus, the Illinois Plaintiffs' and Missouri Plaintiff's claim fails.

*2. The California Plaintiffs' Claim Fails Because the Intercepted Data was Neither Conveyed by Plaintiffs to Reach Nor Was It Novel.*

California only recognizes a breach of confidence cause of action when a plaintiff conveys "confidential ***and*** novel information" to the defendant. *Eisenhower Med. Ctr.*, 721 F. Supp. 3d at 1069 (emphasis added); *Friedman v. DirecTV*, 262 F. Supp. 3d 1000, 1006 (C.D. Cal. 2015) (characterizing the "novelty" requirement as an "essential element" of a breach of confidence claim).

Here, Plaintiffs fail to plausibly allege that they conveyed the allegedly intercepted data—specifically, loan application outcomes—to Reach or that the data is somehow "novel." To the contrary, ***Reach*** generated that information and communicated it to ***Plaintiffs***. Moreover, there is nothing new, striking, strange or unusual about loan determination outcomes that would give rise to the heightened protection typically applied to novel trade secrets or intellectual property. *See Bethlehem Steel Corp. v. United States*, 159 F. Supp. 2d 730, 757 n.49 (2001) (reviewing multiple dictionaries and concluding that the "common denominators of those—and other—dictionary definitions of 'novel' are terms such as 'new,' 'striking,' 'strange,' 'unusual,' and 'not resembling

something formerly known'"). Accordingly, California Plaintiffs' breach of confidence claim fails.[4] *See Gusler v. Kawasaki Motors Corp.*, 216 F.3d 1083, 2000 WL 491703, at *1 (9th Cir. 2000) ("Because the idea was not novel, the breach of confidence . . . claim[] necessarily fail[s].")

**C. Plaintiffs Have Failed to State a Negligence Claim Against Reach.**

To state a negligence claim, a plaintiff must allege facts showing that: (1) the defendant owed the plaintiff a legal duty of care, (2) the defendant breached that duty, and (3) the breach is a proximate or legal cause of the resulting injury. *Low*, 900 F. Supp. 2d at 1031 (California law); *Brown v. State Farm Mut. Auto. Ins. Co.*, No. 1:23-cv-06065, 2025 WL 81340, at *5–6 (N.D. Ill. Jan. 13, 2025) (Illinois law); *Henreid v. Kodner Watkins LC*, No. 4:23-cv-249 HEA, 2024 WL 5200857, at *4 (E.D. Mo. Dec. 23, 2024) (Missouri law).

Plaintiffs' negligence claim fails because: (1) they cannot establish that Reach had a legal duty to keep Plaintiffs' routine browsing information and loan determination confidential, and (2) they fail to allege that any ostensible breach of that duty caused them actual injury.

*1. Reach Does Not Owe a Legal Duty of Confidentiality to Plaintiffs.*

To determine whether a defendant owes a plaintiff a legal duty of care, courts consider whether "the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021); *see Witz v. Great Lakes Educ. Loan Servs., Inc.*, No. 19-cv-06715, 2024 WL 4346632, at *8–9 (N.D. Ill. Sept. 30, 2024) (same under Illinois law); *M.B. v. Live Nation Worldwide, Inc.*, 661 S.W.3d 342, 349 (Mo. Ct. App. 2022) (same under Missouri law).

[4] California Plaintiffs' breach of confidence claim independently fails because their allegations also fall short of establishing that Reach "had knowledge that the information was being disclosed in confidence; there was an understanding between [Reach] and the plaintiff that the confidence be maintained; and there was a disclosure or use in violation of the understanding." *Eisenhower Med. Ctr.*, 721 F. Supp. 3d at 1069.

As pertinent here, none of Plaintiffs' home states' laws impose a blanket legal duty upon website owners to maintain the confidentiality of all information website visitors voluntarily provide on a website. *See, e.g.*, *USA Taekwondo*, 11 Cal. 5th at 216 (California law); *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 817 (7th Cir. 2018) ("Illinois has not recognized an independent common law duty to safeguard personal information"); *Genesis Health Sys.*, 2025 WL 1000192 at *4 (holding that Illinois does not recognize a general common law duty to maintain confidentiality of information).

In this case, Plaintiffs allege that Reach "had a duty of care to use reasonable means to secure and safeguard [data] from unauthorized disclosure to third parties." Compl. ¶ 153. However, Plaintiffs do not allege that a special relationship exists between them that would have given rise to any legal duty for Reach to maintain the confidentiality of Plaintiffs' loan application determination. Nor could they—Reach ultimately declined to offer any services to Plaintiffs.

*2. <u>Plaintiffs Did Not Suffer Actual Damages</u>.*

Even assuming Plaintiffs could establish that Reach owed them a legal duty, their negligence claim would still fail because none have alleged that they suffered actual damages as a result of Reach's breach of such duty. *See, e.g.*, *Burnell v. Marin Humane Soc'y*, No. 14-cv-05635, 2015 WL 6746818, at *19 (N.D. Cal. Nov. 5, 2015); *Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 704 (N.D. Ill. 2012); *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854, 864–65 (Mo. App. 1985). Here, Plaintiffs allege that they suffered injuries, "including: (i) invasion of privacy; (ii) lack of trust in communicating with online service providers; (iii) emotional distress and heightened concerns related to the release of Sensitive Information to third parties, (iv) loss of benefit of the bargain; (v) diminution of value of the Sensitive Information; (vi) statutory damages and (viii) continued and ongoing risk to their Sensitive Information." Compl. ¶ 12. None of these conclusory allegations meet the "actual damages" requirement.

Courts regularly dismiss negligence claims in the informational privacy context where the alleged injury is the diminishment in the value a plaintiff's personal data. *See Low*, 900 F. Supp. 2d at 1032 (dismissing plaintiffs' negligence claim because the complaint failed to allege how plaintiff "was foreclosed from capitalizing on the value of his personal data."); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1089 (N.D. Cal. Sept. 7, 2023); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 484 (N.D. Cal. 2021); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 970 (S.D. Cal. 2012) (finding that allegations about the mere risk of future damages were too speculative to satisfy the damages element of a negligence claim); *Fox v. Cohen*, 406 N.E.2d 178, 183 (Ill. App. 1980) (same); *Bennett*, 698 S.W.2d at 866 (same).

It is similarly insufficient for Plaintiffs to conclusorily state that they experienced emotional distress. Rather, Plaintiffs must allege "facts pertaining to the nature and extent of [their] emotional or mental suffering," which they have failed to do here. *Marin Humane Soc'y*, 2015 WL 6746818 at *19.

Further, as a matter of law, Plaintiffs cannot establish damages by merely relying on the fact that they received debt consolidation-related advertisements—especially where they do not allege that Reach (as opposed to some other competing debt consolidation company) served those advertisements. *See Rodriguez v. Fountain9, Inc.*, No. 24STCV04504, 2024 WL 3886811, at *4 (Cal. Super. July 9, 2024) (finding allegations that the defendant conducted targeted advertising to be insufficient to establish concrete injury-in-fact); *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (finding no injury where plaintiff alleged defendant obtained plaintiff's home address without permission and mailed him advertisements).

Given the absence of any allegations of actual damages caused by Reach's conduct, Plaintiffs' negligence claim fails.

## IV. Plaintiffs Fail to Assert Plausible Contract or Equitable Claims Against Reach.

### A. Plaintiffs Cannot Assert an Implied Contract Claim Against Reach.

Plaintiffs' implied contract claim fails because (1) the Complaint does not allege facts sufficient to demonstrate the existence of a binding agreement between Reach and Plaintiffs, and (2) Plaintiffs do not allege that they suffered cognizable damages resulting from Reach's breach of any alleged agreement.

#### *1. There Is No Binding Agreement Between Plaintiffs and Reach.*

An implied-in-fact agreement is founded upon a meeting of minds which, although not embodied in an express contract, is "inferred from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Jasper & Black, LLC v. Carolina Pad Co.*, No. 10-cv-3562, 2012 WL 13387967, at *2 (S.D.N.Y. Sep. 18, 2012) (quoting *Federal Ins. Co. v. Distinguished Props. Umbrella Mgrs.*, 721 F. Supp. 2d 293, 302 (S.D.N.Y. 2010)). "To sustain a claim for breach of an implied contract, a plaintiff must allege facts sufficient to demonstrate plausibly the requisite elements of an implied contract" including consideration and "notably that a 'meeting of the minds was indicated by some intelligible conduct, act or sign.'" *Id.*; *see also Leibowitz v. Cornell Univ.*, 584 F.3d 487, 506–07 (2d Cir. 2009). "Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (N.D. Cal. 2008) (quoting *Posner v. Minn. Mining & Mfg. Co.*, 713 F. Supp. 562, 563–64 (E.D.N.Y.1989)).

Here, Plaintiffs allege that when they "provided their Sensitive Information to Defendant in exchange for services, they entered into an implied contract pursuant to which Defendant agreed to safeguard and not disclose their Sensitive Information without consent," and that they "accepted" unspecified "offers" by Reach before inputting their information into the Website. *See* Compl. ¶¶ 161–62. Plaintiffs do not, however, provide any details about the "offers" Reach

allegedly made, or identify the conduct Reach allegedly engaged in that would be sufficient demonstrate its mutual assent to "safeguard and not disclose" Plaintiffs' information. Nor do they allege facts to establish that the alleged agreement was supported by consideration.

Plaintiffs' allegations show, at most, that they voluntarily visited the Website and chose to enter information—none of which itself is alleged to have been intercepted—to get an instant determination about whether they qualified for Reach's debt consolidation services. These allegations do not support a viable breach of implied contract claim. *See, e.g.*, *Lapine v. Seinfeld*, 918 N.Y.S.2d 313, 318 (N.Y. Sup. Ct. 2011) (holding that the defendant's solicitation of information, alone, was not enough to sustain implied contract claim regarding the use of that information).

*2. Reach's Purported Breach of Implied Contract Did Not Damage Plaintiffs.*

Even if Plaintiffs could allege the existence of enforceable implied contract, they must also allege that, as result of Reach's purported breach of such contract, they suffered actual damages. *See Manning v. Pioneer Sav. Bank*, 55 N.Y.S.3d 587, 593 (N.Y. Sup. Ct. 2016) (dismissing implied contract claim based on lack of cognizable injury); *Eisenhower Med. Ctr.*, 721 F. Supp. 3d at 1067–68 (requiring "appreciable and actual damage" to sustain contract claim); *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 149 (2005) (requiring "an actual loss or measurable damages resulting from the breach").

Here, aside from Plaintiffs' vague and conclusory allegations that they "sustained damages," Compl. ¶ 166, Plaintiffs fail to allege what, if any cognizable damages they suffered as a result of Reach's alleged breach of an implied contract. This, too, is grounds for dismissing Plaintiffs' claim.

**B. Plaintiffs Have Failed to Assert a Plausible Claim for Unjust Enrichment.**

To state an unjust enrichment claim under New York law, a plaintiff must allege "that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *PulsePoint*, 684 F. App'x at 36–37. Here, Plaintiffs' unjust enrichment claim fails for at least two reasons.

First, an "unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Ham v. Lenovo*, 664 F. Supp. 3d 562, 583–84 (S.D.N.Y. 2023). Two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 157 (S.D.N.Y. 2022) ("Courts will routinely dismiss an unjust enrichment claim that simply duplicates, or replaces, a conventional contract or tort claim."); *Afriyie v. NBCUniversal Media*, -- F. Supp. 3d --, 2025 WL 962033, at *14 (S.D.N.Y. 2025) (dismissing unjust enrichment claim because it rested on the same allegedly tortious conduct as plaintiffs' other claims).

For example, in cases where the plaintiff asserted both an unjust enrichment claim and a claim under New York's GBL based on the same conduct, courts have dismissed the unjust enrichment claim as duplicative. *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) ("[C]ourts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of [NY]GBL claims."); *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021) (dismissing unjust enrichment claim as duplicative of Section 349 claim). This holds true even if the plaintiff's other claims are ultimately defective. *Izquierdo v. Mondelez Int'l., Inc.*, No. 16-cv-04697, 2016 WL 6459832, at *10 (S.D.N.Y. Oct. 26, 2016) (holding that even if "a plaintiff's other claims are defective . . . an unjust enrichment claim cannot remedy the defects" (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. App. 2012))); *Rider*

*v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 502 (S.D.N.Y. 2023) ("[U]njust enrichment is not a catchall cause of action to be used when others fail." (citing *Corsello*, 967 N.E.2d at 1185)).

In this case, Plaintiffs' unjust enrichment claim seeks the same relief for the same conduct on which Plaintiffs rely as grounds for bringing their other state and federal privacy claims, including their New York GBL claim. Because the other claims provide an adequate legal remedy at law, Plaintiffs cannot seek duplicative equitable relief through an unjust enrichment claim.

Second, Plaintiffs have failed to establish that Reach was enriched at Plaintiffs' expense when Google allegedly gained access to, and potentially used, their data. Courts have rejected unjust enrichment claims where, as here, the "alleged benefit to defendant[]" of using plaintiffs' information "did not come at plaintiffs' expense, and plaintiffs did not suffer any loss in connection with that use for which restitution is an appropriate remedy." *Edelman v. Starwood Capital Grp., LLC*, 70 A.D.3d 246, 250 (N.Y. Sup. Ct. 2009). Because Plaintiffs have not alleged facts sufficient to show that Google's use of their data actually came at their expense, their unjust enrichment claim fails.

## CONCLUSION

Plaintiffs have failed to allege facts sufficient as a matter of law to support their claims against Reach, and they lack a good faith basis for amending their complaint with facts that would cure the current pleading deficiencies. Accordingly, Reach respectfully requests that the Court dismiss Plaintiffs' claims with prejudice.

DATED: July 11, 2025

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: */s/ Gregory P. Szewczyk*
Gregory P. Szewczyk (SBN 4795464)
J. Matthew Thornton (*pro hac vice*)
Alexia C. Chapman (*pro hac vice*)

*Attorneys for Defendant*

## WORD COUNT CERTIFICATION

I, the undersigned, hereby certify that this Memorandum contains 8,716 words—inclusive of footnotes and exclusive of any captions, indexes, tables, signature blocks, and required certificates—and it is in compliance with Local Rule 7.1 of the Southern District of New York. In preparing this certification, I relied on the word count of the word-processing system used to prepare this document.

DATED: July 11, 2025

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: *\/s/ Alexia C. Chapman*

Gregory P. Szewczyk (SBN 4795464)
J. Matthew Thornton (*pro hac vice*)
Alexia C. Chapman (*pro hac vice*)

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of July, 2025, I directed a true and correct copy of the foregoing to be served via the electronic filing system upon the following counsel of record:

Sonjay Singh
Siri & Glimstad LLP
C/O Sonjay Singh
745 Fifth Avenue
Suite 500
New York, NY 10151
646-829-1389
Email: ssingh@sirillp.com

Mason Adams Barney
Siri & Glimstad LLP
745 Fifth Avenue
Suite 500
New York, NY 10151
212-532-1091
Email: mbarney@sirillp.com

BY: *<u>/s/ Stephanie Agabo</u>*
Stephanie Agabo
*On behalf of Defendant, Reach Financial LLC*