U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ALISON CAMM, NICOLE FLICK, NORMA CISNEROS, KRYSTAL FORBES,** and **ENZA ZITO .**, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**REACH FINANCIAL, LLC**,

Defendant.

No. 1:25-cv-01921-KPF

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT REACH FINANCIAL LLC's MOTION TO DISMISS CLASS ACTION COMPLAINT**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT REACH FINANCIAL LLC's
MOTION TO DISMISS CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... IV

I. PRELIMINARY STATEMENT .......... 1

II. FACTUAL BACKGROUND .......... 2

A. Google's Tracking Tools .......... 2

B. Reach's Use of the Tracking Tools .......... 2

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 3

A. Plaintiffs' claim under New York's General Business Law § 349 is sound. .......... 3

i. Plaintiffs Have Standing to Bring Their GBL Claims. .......... 4

C. Plaintiffs' CIPA Claims are Well Plead. .......... 8

C. Plaintiffs' ECPA claims are well-pled. .......... 10

ii. Reach's conduct violated the GLBA. .......... 10

iii. Reach's interception of Plaintiffs' Sensitive Information was distinct from its criminal use. .......... 12

iv. Reach intercepted Plaintiffs' communications with the requisite criminal intent. .......... 13

D. Invasion of Privacy .......... 15

i. California Plaintiffs' Invasion of Privacy claim succeeds under an intrusion upon seclusion theory. .......... 15

ii. All Plaintiffs' Invasion of Privacy claims additionally succeed under a publication of private facts theory. .......... 16

iii. Disclosure of Plaintiffs' Sensitive Information was highly offensive .......... 18

E. Negligence .......... **Error! Bookmark not defined.**

i. Reach had a duty to Plaintiffs........................................................................ 19

ii. Plaintiffs adequately plead the existence of damages that were proximately caused by Reach's breach of its duty to protect their Sensitive Information. ...................... 20

F. Implied Contract ..................................................................................... 21

G. Unjust Enrichment .................................................................................. 21

V. CONCLUSION......................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.J. v. LMND Med. Grp., Inc.,*
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 2024) ........ 19

*Allen v. Quicken Loans,*
2018 U.S. Dist. LEXIS 192066 (D.N.J. Nov. 2018) ........ 11

*Anderson News, L.L.C. v. Am. Media, Inc.,*
680 F.3d 162 (2d Cir. 2012) ........ 3

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........ 3

*A.D., et al v. Aspen Dental Mgmt., Inc.*,
2024 U.S. Dist. LEXIS 161090 (N.D. Ill. Sept. 2024) ........ 15, 19

*AT&T Corp. v. Voice Stream Network*, Inc.,
2017 U.S. Dist. LEXIS 15714 (S.D.N.Y. Feb. 2017) ........ 4

*B.K. v. Eisenhower Med. Ctr.*,
2024 U.S. Dist. LEXIS 67497 (C.D. Cal. Apr. 2024) ........ 13, 15

*BM Real Estate Servs. v. Angel Oak Mortg. Sols., LLC*,
2020 U.S. Dist. LEXIS 263812 (C.D. Cal. Aug. 2020) ........ 19

*Brahm v. Hosp. Sisters Health Sys.*,
2024 U.S. Dist. LEXIS 114827 (W.D. Wis. Jun. 2024) ........ 17

*Brown v. USA Taekwondo,*
11 Cal. 5th 204 (2021) ........ 20

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002) ........ 3

*Cline v. TouchTunes Music Corp.*,
211 F. Supp. 3d 628 (S.D.N.Y. Sept. 2016) ........ 6

*Cohen v. Casper Sleep Inc.,*
2018 U.S. Dist. LEXIS 116372 (S.D.N.Y. Jul. 2018) ........ 8

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
887 F.3d 803 (7th Cir. 2018) ........ 19

*Cooney v. Chi. Pub. Schs*,
943 N.E.2d 23 (Ill. App. Ct. 2010) ........ 20

*Cooper v. Mount Sinai Health Systems*, Inc.,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ........ 8, 13, 14

*Cooper v. Parsky*,
140 F.3d 433 (2d Cir. 1998)....................................................................................3

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023)....................................................................16

*Cruz v. Fxdirectdealer, LLC*,
720 F.3d 115 (2d. Cir. 2013)............................................................................4, 5, 6

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010)....................................................................................3

*Doe v. Fullstory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .................................................................16

*Doe v. N. Cal. Fertility Med. Ctr.*,
2024 U.S. Dist. LEXIS 12175 (E.D. Cal. Jan. 2024)..............................................21

*Doe v. Regents of the Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ...................................................................16

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ...........................................................17, 20

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013)....................................................................................7

*Flores v. AON Corp.*,
2 2023 IL App (1st) 230140, ¶ 23, 477 Ill. Dec. 110, 234 N.E.3d 123 ..................20

*In re Gallagher Data Breach Litigation*
631 F. Supp. 3d 573 (N.D. Ill. 2022) .....................................................................20

*Gay v. Garnet Health*,
2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sep. 2024) .....................................13, 15

*In re GE/CBPS Data Breach Litig.*,
2021 U.S. Dist. LEXIS 146020 (S.D.N.Y. Aug. 2021) ..........................................21

*Goshen v. Mut. Life Ins. Co.*,
98 N.Y.2d 314 (2002) ........................................................................................4, 5, 6

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................................18

*Hartley v. Univ. of Chi. Med. Ctr.*,
2024 U.S. Dist. LEXIS 78517 (N.D. Ill. Apr. 2024) ..............................................15

*Hubbard v. Google LLC*,
2024 U.S. Dist. LEXIS 11787 (N.D. Cal. July 1, 2024).........................................18

*Javier v. Assurance IQ LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .....................................................................8

*Kane v. Univ. of Rochester*,
2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 2024)................................................ 13, 15

*Koch v. Acker, Merrall & Condit Co.*,
18 N.Y.3d 940 (2012)........................................................................................................ 7

*Kurowski v. Rush Sys. for Health*,
2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 2023)................................................ 13, 15

*Lovgren v. Citizens First Nat'l Bank*,
126 Ill. 2d 411 (1989)...................................................................................................... 16

*Loyola Univ. Med. Ctr.*,
2024 U.S. Dist. LEXIS 119995 (D.D.C. Mar. 2024)................................................... 15, 19

*M.G. v. Therapymatch, Inc.*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. Sep. 2024)................................................. 9, 10

*Mata v. Zillow Grp., Inc.*,
2024 U.S. Dist. LEXIS 229061 (S.D. Cal. Dec. 2024).......................................................... 9

*Mantikas v. Kellogg Co.*,
910 F.3d 633 (2d Cir. 2018)............................................................................................... 7

*MaxEn Capital Advisors, Ltd. v. Pure Lithium Corp*.,
2024 U.S. Dist. LEXIS 190060 (S.D.N.Y. Oct. 2024)....................................................... 22

*Mayer v. Midwest Physician Admin. Servs., LLC,*
2025 U.S. Dist. LEXIS 60486 (N.D. Ill. Mar. 2025)................................................... 15, 19

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022).............................................................................. 16

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024)......................................................................... 13, 15

*In re Mondelez Data Breach Litig.*,
2024 U.S. Dist. LEXIS 97948 (N.D. Ill. Jun. 2024)......................................................... 20

*Mountz v. Global Vision Prods.*,
3 Misc. 3d 171 (Sup. Ct. 2003).......................................................................................... 4

*Mount v. PulsePoint, Inc.*,
684 Fed. App'x 32 (2d Cir. 2017)....................................................................................... 8

*Orlander v. Staples*, Inc.,
802 F.3d 289 (2d Cir. 2015)............................................................................................... 7

*People v. Jackson*,
116 Ill. App. 3d 430 (1983).............................................................................................. 18

*Polk v. Del Gatto, Inc.*,
2021 U.S. Dist. LEXIS 137764 (S.D.N.Y. July 2021)......................................................... 6

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 2025) .................................................... 13, 15

*Reed v. MRS BPO, L.L.C.*,
2022 U.S. Dist. LEXIS 156394 (N.D. Ill. Aug. 2022)........................................................ 16

*Schuck v. Chi. Pub. Schs,*
407 Ill. App. 3d 358 (2010) ............................................................................................. 20

*Silver v. Stripe Inc.*,
2021 U.S. Dist. LEXIS 141090 (N.D. Cal. Jul. 2021)........................................................ 15

*Sofka v. Thal*,
662 S.W.2d 502 (Mo. 1983) ............................................................................................. 16

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 2024)....................................................... 16

*Stein v. Edward-Elmhurst Health,*
No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) .................. 13, 19

*Sweet v. Sheahan*,
235 F.3d 80 (2d Cir. 2000)................................................................................................. 3

*Toy v. Life Line Screening of Am. Ltd.*,
2024 U.S. Dist. LEXIS 88872 (N.D. Cal. Mar. 2024).................................................. 10, 21

*In re Unite Here Data Sec. Incident Litig.*,
740 F. Supp. 3d 364 (S.D.N.Y. 2024)................................................................................ 21

*Vinas v. Hayes*,
2018 Cal. Super. LEXIS 25957 (Cal. Super. Ct. 2018) ...................................................... 18

*Vishal Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ............................................................................. 19

*Voronina v. Scores Holding Co.*,
2017 U.S. Dist. LEXIS 1858 (S.D.N.Y. Jan. 2017) ............................................................. 6

*Wallace v. Health Quest Sys.*,
2021 U.S. Dist. LEXIS 54557 (S.D.N.Y. Mar. 2021) ........................................................ 21

*Ward v. TheLadders.com, Inc.,*
3 F. Supp. 3d 151 (S.D.N.Y. 2014)................................................................................. 5, 6

*Wittmeyer v. Heartland All. for Hum. Needs & Rights*,
2024 U.S. Dist. LEXIS 8803 (N.D. Ill. Jan. 2024) ............................................................ 20

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ............................................................................. 18

**Statutes**

15 U.S.C.S. § 6801 .......... 10

15 USCS § 6804 .......... 11

15 U.S.C.S. § 6804(a)(1)(C) .......... 10

18 U.S.C. § 2511(1)(c)-(d) .......... 12

18 U.S.C. § 2511(2)(d) .......... 12

16 C.F.R. § 313.1 .......... 10

16 C.F.R. § 313.3(e)(2)(i) .......... 11

16 C.F.R. § 313.3(n)(1) .......... 11

16 C.F.R. § 313.3(o)(1) .......... 11

16 C.F.R. § 313.4 .......... 11

16 C.F.R. § 313.10 .......... 11

16 C.F.R. § 313.10(b)(1) .......... 11

815 ILCS 530/45 .......... 20

N.Y. Gen. Bus. Law § 349(a) .......... 4

N.Y. Gen. Bus. Law § 349(h) .......... 4

**Rules/Codes**

Cal. Penal Code § 631(a) .......... 9

**Other Authorities**

RESTATEMENT (SECOND) OF TORTS § 652D (1977) .......... 16, 17

## I. PRELIMINARY STATEMENT

It is natural for individuals to want to keep their finances private, especially when they are struggling to repay debts. Defendant Reach Financial, LLC ("Reach") is a debt relief company that claims to "help people outsmart debt for good[,]" including through its debt consolidation loan program.[1] Through Reach's website, www.reach.com (the "Website"), Plaintiffs applied for debt consolidation loans and received an instant determination regarding whether their loan was accepted. When they did so, they believed that their communications with Reach would be held to the standard of confidentiality expected when such a sensitive financial topic such as debt consolidation is at issue. Unfortunately, they were not. Unbeknownst to Plaintiffs, Reach had installed advertising surveillance software produced by Google (the "Tracking Tools") on its Website and, in exchange for advanced marketing and advertising services, allowed this internet behemoth to collect sensitive personally identifiable information, including financial information, from users of the Website for the purpose of targeted advertising. *Id.* ¶¶ 4-9. This information included some of the most sensitive aspects of Plaintiffs' lives, including the fact that they were applying for a debt consolidation loan due to their financial difficulties, as well as whether that loan was approved or denied (collectively, the "Sensitive Information"). *Id.* ¶¶ 78-84. In the face of these serious, well-pled allegations, Reach attempts to argue that Plaintiffs had no privacy interest in their Sensitive Information, and that Reach owed no legal duty to protect it.[2]

As explained herein, Reach's Motion to Dismiss uniformly misrepresents both Plaintiffs' allegations and applicable law. It should be denied.

---

[1] ECF No. 1 [Class Action Complaint] (the "Complaint" or "CAC"), ¶ 9.

[2] *See* ECF No. 21 [Defendant's Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs' Class Action Complaint] ("Mot.").

## II. <u>FACTUAL BACKGROUND</u>

### A. Google's Tracking Tools

Google offers website operators access to its proprietary suites of marketing, advertising and customer analytics software. *Id.* ¶ 5. Armed with these programs, website operators can leverage Google's enormous database of consumer information for the purposes of deploying targeted advertisements, performing minute analyses of their customer bases, and identifying new market segments that may be exploited. *Id*. But, in exchange for access to this software, website operators must install Google's Tracking Tools on their website—third party surveillance software that captures sensitive, personally identifiable information provided to the website operator by its users. *Id*. ¶ 6. Google then aggregates the user information that it collects from third-party websites into 'advertising profiles' consisting of all of the data that it has collected about a given user. *Id.* ¶ 56. With these advertising profiles, Google can sell hyper-precise advertising services, allowing its clients to target internet users based on combinations of their location, age, race, interests, hobbies, life events (e.g., recent marriages, graduation, or income, type of employment, use of specific apps or websites, and more). *Id*. Where an internet user has a Google account, this information can be correlated to their identity, through tracking cookies installed on the user's web browser. *Id*. ¶¶ 70-77.

### B. Reach's Use of the Tracking Tools

Reach installed Google's Tracking Tools on the Website. *Id*. ¶ 75. It then specifically chose to take the generic version of the Tracking Tools and configure them to convey almost any action taken by users of the Website. *Id.* ¶ 80. While Reach argues that the information captured by its Tracking Tools is limited to URL information, in reality, the Tracking Tools are configured to intercept and relay precise actions taken by users' of the Website, including the results of their

loan applications. A.C. ¶¶ 76-79. All of this Sensitive Information is shared with Google, allowing advertisers to use it for the purpose of targeted advertising.

## III. LEGAL STANDARD

When ruling on a Rule 12(b)(6) motion to dismiss, "the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). Courts "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner*, Inc., 282 F.3d 147, 152 (2d Cir. 2002). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement") (internal quotation marks omitted). Further, a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Anderson News*, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012). Thus, "[d]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

## IV. ARGUMENT

### A. Plaintiffs' claim under New York's General Business Law § 349 is sound.

Reach contends that Plaintiffs fail to state a claim under Section 349 of New York's GBL for two reasons: (1) Plaintiffs lack standing and (2) Plaintiffs fail to allege that Reach engaged in

any acts proscribed by New York's General Business Law Section 349 (hereafter "Section 349"). *See* Def. Mot. at 6. As explained below, Reach is wrong on both counts.

***i. Plaintiffs Have Standing to Bring Their GBL Claims.***

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). The language of Section 349 "evinces a legislative intent to address commercial misconduct occurring within New York." *Goshen v. Mut. Life Ins. Co.,* 98 N.Y. 2d 314, 324-25 (2002).

Section 349 provides that "*any person* who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice…" N.Y. Gen. Bus. Law § 349(h) (emphasis added). Therefore, Section 349 does *not* prevent non-residents from bringing a claim. Instead, to maintain a Section 349 claim, "[s]ome part of the underlying transaction must occur in New York State." *Mountz v. Global Vision Prods.*, 3 Misc 3d 171, 172 (Sup. Ct. 2003). Indeed, as the *Goshen* Court noted, "our General Business Law analysis does not turn on the residency of the parties." *Goshen*, 98 N.Y. at 325. A territorial component exists, but "[o]ut-of-state plaintiffs are not, however, categorically barred from bringing claims under § 349—the emphasis is not on plaintiffs' residency but on the situs of the transaction." *AT&T Corp. v. Voice Stream Network*, Inc., No. 15-CV-8155 (LLS)(SN), 2017 U.S. Dist. LEXIS 15714, at *27 (S.D.N.Y. Feb. 2, 2017).

As the Second Circuit has previously held, when evaluating the territorial requirements of Section 349, courts should "focus on the location of the transaction, and particularly the strength of New York's connection to the allegedly deceptive transaction, rather than 'on the residency of the parties.'" *Cruz v. Fxdirectdealer*, LLC, 720 F.3d 115, 123 (2d. Cir. 2013) (quoting *Goshen*, 98 N.Y.2d at 325). This test "accords with Goshen's admonition that section 349 was not 'intended to

function as a per se bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state.'" *Id.* (quoting *Goshen*, 98 N.Y.2d at 325). As in this case, *Cruz* considered, in part, whether an out-of-state plaintiff had standing to sue a New York-based defendant under Section 349. *See id.* at 119. The Second Circuit held that the out-of-state plaintiff had standing because the case "involve[d] a series of allegedly deceptive transactions that occurred in New York and implicate[d] the interests of New York." *Id*. at 123. To support this conclusion, the Second Circuit noted that the agreement between the parties "specifies that New York law governs all disputes between [plaintiff] and [defendant]; indeed, it provides that all suits relating to the Agreement are to be adjudicated in state or federal courts located in New York." *Id*. An identical situation exists in this case. Reach's terms of use state that:

> This Website is located in the State of New York. These Terms of Use and the relationship between you and Reach Financial shall be governed by the laws of the State of New York without regard to its conflicts of law provisions. You agree to the personal jurisdiction by and venue in the state and federal courts, and agree and consent that such courts are the exclusive forum for litigation of any claim or cause of action arising out of or relating to your use of this Website or the Content.[3]

Assuming these Terms are valid and enforceable, Plaintiffs have no other venue in which to bring their claims. Plaintiffs have brought their claims in exactly the forum where Reach states they must. Further, Reach explicitly acknowledges that its Website is based in New York and, as alleged in the Complaint, the relevant communications between the Plaintiffs and Reach occurred through that Website.

*Ward v. TheLadders.com*, *Inc.,* addressed facts like those here, in which out-of-state plaintiffs who transacted with a New York-based business via its website alleged that the defendant violated Section 349. 3 F. Supp. 3d 151, 168 (S.D.N.Y. 2014). In refusing to dismiss the Section

[3] https://www.reach.com/corporate/terms-of-use.

349 claim, the *Ward* Court noted that "[t]he defendant operated a website in New York and maintained its bank account in New York" and that "[m]any of the relevant communications and transactions with the defendant, including the registration, cancellation, review of website materials, and various monetary transactions, apparently occurred on or through the website itself, which is equivalent to communicating or transacting directly with a New York address." *Id*. Some versions of the defendant's terms of use in *Ward* also included choice-of-law and forum-selection clauses identifying New York law as controlling and New York courts as the venue for any disputes. *See id*. at n. 8.

*Cruz* and *Ward* are not outliers. Other courts have acknowledged the reach of Section 349 when the transaction at issue has a connection to New York. *See, e.g., Cline v. TouchTunes Music Corp.*, No. 14-CV-4744 (LAK), 211 F. Supp. 3d 628, 2016 U.S. Dist. LEXIS 134473, at *2 (S.D.N.Y. Sept. 29, 2016) (finding territoriality requirement met for music app customers who transacted with New York based company by internet); *Voronina v. Scores Holding Co.*, No. 16-cv-2477 (LAK), 2017 U.S. Dist. LEXIS 1858 (S.D.N.Y. Jan. 5, 2017) (acknowledging that the complaint alleged strong enough New York connections to the out-of-state deceptive acts to support a Section 349 claim); *Polk v. Del Gatto, Inc*, 2021 U.S. Dist. LEXIS 137764 (S.D.N.Y. July 23, 2021) (jurisdiction existed where defendant receives, processes and sends payments through New York office and agreement contains New York choice of law clause).

Here, "the out-of-state plaintiffs have pleaded sufficient facts that, at the very least, give rise to a plausible inference that the allegedly deceptive transaction occurred in New York and that the defendant's conduct fell within the ambit of the 'legislative intent to address commercial misconduct occurring within New York.'" *Ward,* 3 F. Supp. 3d at 168 (quoting *Goshen*, 774

N.E.2d at 1195). Thus, this Court should find that Plaintiffs have standing to support their Section 349 claim.

***ii. Plaintiffs Sufficiently Allege Materially Misleading Conduct and Actual Injury.***

To maintain a claim under Section 349, the conduct at issue must be "'materially misleading'" and the plaintiff must have "'suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples*, Inc., 802 F3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 967 (2012)). In this case, Plaintiffs have adequately alleged that Reach's conduct was materially misleading and that they suffered an injury because of that misleading conduct.

First, Plaintiffs allege that Reach's conduct is materially misleading because "[u]nbeknownst to Plaintiffs and Class Members, Defendant intentionally configured the Google Pixels installed on its Website to capture and transmit the Sensitive Information that they communicated to Defendant while applying for a debt consolidation loan." Complaint ¶ 79. Reach's conduct was materially misleading because Plaintiffs were not shown any disclaimer or warning that their Sensitive Information would be collected and disclosed to third parties. *See* Complaint ¶ 86. Indeed, the tracking software utilized by Reach was only viewable by analyzing network information transmitted by Reach's website through examination of its source code or by using sophisticated software tools—making the tracking software invisible to Plaintiffs and the average internet user. *See* Complaint ¶ 85. Thus, Plaintiffs have "plausibly allege[d] that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

Second, under Section 349, an injury "need not take the form of a pecuniary harm." *Cooper v. Mount Sinai Health Systems*, Inc., 742 F. Supp. 3d 369, 383 (S.D.N.Y. 2024). In this instance, Plaintiffs pleaded that Reach collected Plaintiffs' Sensitive Information and disclosed it to third parties without their knowledge or consent. *See* CAC ¶ 206-210. "New York courts have held that a privacy injury can be the basis for a § 349 claim 'where confidential, individually identifiable information—such as medical records or a social security number—is collected without the individual's knowledge or consent.'" *Mount Sinai Health Sys., Inc.,* 742 F. Supp. 3d at 383-384 (quoting *Mount v. PulsePoint, Inc.*, 684 Fed. App'x 32, 35 (2d Cir. 2017)).

The cases cited by Reach are inapposite. For example, in *Cohen v. Casper Sleep Inc.* the plaintiff did "not allege that any 'expos[ed]' information was particularly sensitive…" 2018 U.S. Dist. LEXIS 116372, at *20-21 (S.D.N.Y. July 12, 2018) (citation omitted). Likewise, in *Mount v. PulsePoint*, the Court noted that "[n]o New York court, however, has ever construed § 349 to reach the privacy invasion alleged here, *i.e.*, collection of internet users' aggregated, anonymized web-browsing data." 684 F. App'x at 35. However, as noted above, the *Mount* Court *does* acknowledge that Section 349 injuries have been recognized "where confidential, individually identifiable information…is collected without the individual's knowledge or consent." *Id*. This is *precisely* the type of injury that Plaintiffs allege in this case. Thus, this Court should deny Reach's attempt to have Plaintiffs Section 349 claim dismissed.

**B. Plaintiffs' CIPA Claims are Well-Pled.**

Section 631(a)(4) of CIPA provides a cause of action where a person 'aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above.'" *Javier v. Assurance IQ LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023) (quoting Cal. Penal Code § 631(a)). To assert a violation of CIPA based on

derivative liability, a plaintiff must allege facts showing a third party's predicate violation of clause (i), (ii), or (iii) of Section 631(a). It is sufficient for a plaintiff to allege a defendant intentionally procured Google Tracking Tools and installed them on its website in order to satisfy this requirement." *See M.G. v. Therapymatch, Inc.*, 2024 U.S. Dist. LEXIS 166534, at *5 (N.D. Cal. Sep. 16, 2024) (allegations that defendant "knowingly agreed to use Google Analytics, embedded tracking technology code on its website, and allowed Google to have direct access to [defendant's website] users' private...information" sufficient aiding and abetting under the CIPA).

Reach argues that Plaintiffs fail to allege that (1) Google violated CIPA; (2) that Reach knew that Google violated CIPA; and (3) that Reach installed the Tracking Tools in order to enable Google's violation of CIPA. Mot. at 10-11. Not so. In their Complaint, Plaintiffs detail how Google's Tracking Tools are installed on websites like Reach's and collect data from website users to fuel its targeted advertising enterprise. CAC ¶¶ 51-77. Moreover, Plaintiffs further allege that Defendant intentionally installed the Tracking Tools, knowing that it would "receive[] compensation in the form of advanced advertising services and cost-effective marketing on third - party platforms in exchange for allowing Google to collect Plaintiffs' and Class Members' Sensitive Information." ¶ 97. These allegations clearly show that Reach knew that Google was violating the CIPA by collecting and monetizing Plaintiffs' communications through its Website and installed the Tracking Tools to further those violations. Indeed, numerous courts have found that CIPA's scienter requirement is satisfied through allegations, like Plaintiffs', that a defendant installed third-party tracking technology on its website for advertising purposes, despite knowing that the technology would disclose its website's users' personally identifiable information. *See, e.g.*, *Mata v. Zillow Grp., Inc.*, No. 24-cv-01095-DMS-VET, 2024 U.S. Dist. LEXIS 229061, at *18 (S.D. Cal. Dec. 18, 2024) (allegations that defendant "programmed such third-party tracking

technology into its website for advertising purposes and to increase its profits" satisfied scienter); *Toy v. Life Line Screening of Am. Ltd.*, No. 23-cv-04651-RFL, 2024 U.S. Dist. LEXIS 88872, at *3 (N.D. Cal. Mar. 19, 2024) (allegations that defendant "purposely installed these tracking technologies to optimize its advertising and marketing" satisfied scienter); *Therapymatch, Inc.*, 2024 U.S. Dist. LEXIS 166534, at *5 (allegations that defendant "knowingly agreed to use Google Analytics, embedded tracking technology code on its website, and allowed Google to have direct access to [defendant's website] users' private medical information" sufficient aiding and abetting under the CIPA).

### C. Plaintiffs' ECPA Claims are Well-Pled.

#### *i. Reach's conduct violated the GLBA.*

Congress enacted Title V of the Gramm-Leach-Bliley Act (the "GLBA") to further "the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C.S. § 6801. The GLBA grants the Federal Trade Commission ("FTC") "the authority to prescribe such regulations as may be necessary to carry out [its] purposes[.]" 15 U.S.C.S. § 6804(a)(1)(C). Pursuant to this authority, the FTC has promulgated regulations governing the disclosure of "nonpublic personal information," defined as including both "[p]ersonally identifiable financial information" and "[a]ny list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any personally identifiable financial information that is not publicly available." 16 C.F.R. § 313.3(n)(1); *see also* Statutory Authority of 16 CFR Ch. I, Subch. C, Pt. 313 (specifying that 16 C.F.R. § 313.1, *et seq.* (the "Regulations") are promulgated under the GLBA). The Regulations clearly state that they are applicable "regardless of whether [the covered entity] and the consumer

have established a customer relationship." 16 C.F.R. § 313.10(b)(1). In fact, the Regulations explicitly state that the definition of a consumer includes “an individual who applies to [a covered entity] for credit for personal, family, or household purposes is a consumer of a financial service, ***regardless of whether the credit is extended***.” 16 C.F.R. § 313.3(e)(2)(i) (emphasis added). Moreover, the Regulations included “***[a]ny*** information [a covered entity] collects through an Internet “cookie” (an information collecting device from a web server)” as an example of “personally identifiable information.” 16 C.F.R. § 313.3(o)(1). Plaintiffs’ Sensitive Information is inarguably information collected through internet cookies pertaining to their applications for credit. Therefore, that information, as well as non-public information derived from it such as their loan application results, is clearly protected under the GLBA, regardless of whether Plaintiffs’ loans were approved or denied. As described in the Complaint, Reach violated the GLBA by disclosing Plaintiffs’ Sensitive Information without conspicuously disclosing that such information would be disclosed to a third party; failing to give Plaintiffs the opportunity to direct that their Sensitive Information not be disclosed; and failing to explain to Plaintiffs how they could exercise their non-disclosure option. CCAC ¶ 90 (quoting 15 USCS § 6804); *see also* 16 C.F.R. § 313.4, 313.10.

Reach cites *Allen v. Quicken Loans* for the proposition that its conduct is not prohibited under the GLBA, but *Quicken Loans* is not applicable to this matter. In *Quicken Loans*, the Plaintiffs did not argue, and the court consequently did not consider, whether the defendant’s conduct violated the FTC regulations promulgated under the GLBA discussed above. Civil Action No. 17-12352 (ES) (MAH), 2018 U.S. Dist. LEXIS 192066, at *16 (D.N.J. Nov. 9, 2018) (finding that the plaintiff’s reliance on the GLBA was “contained in two conclusory statements in the

Amended Complaint"). When those Regulations are duly considered, it is exceedingly obvious that Reach's conduct violated the GLBA.

***ii. Reach's interception of Plaintiffs' Sensitive Information was distinct from its criminal use.***

A claim exists under the ECPA where a defendant intentionally uses or discloses the contents of an intercepted electronic communication. 18 U.S.C. § 2511(1)(c)-(d). Where, like here, the defendant is a party to the communication, liability may still be established through the 'crime-tort exception' if the defendant's interception is "for the purpose of committing [a] criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Reach argues that Plaintiffs' ECPA claim cannot succeed because any crime or tort did not arise secondarily from Reach's interception of their Sensitive Information, but this argument misunderstands both the applicable standard and Plaintiffs' allegations. Plaintiffs do not allege that Reach violated the GLBA by ***intercepting*** their communications made through the Website. Rather, Plaintiffs allege that Reach violated the GLBA by ***disclosing the intercepted communications to unauthorized third parties***. As one court explains in the related context of HIPAA,[4] this theory of liability conforms with the text of the ECPA:

> The Court disagrees that use of health information 'inheres in the alleged interception.' In setting forth the crime-tort exception, the Wiretap Act expressly distinguishes between the interception of communications and a separate criminal or tortious purpose by providing that the communication must be '*intercepted* for the purpose of committing any criminal or tortious act.' The Wiretap Act does not distinguish between the use of communications and a separate criminal or tortious

[4] Due to the similarities between the HIPAA privacy rule and the GLBA Regulations discussed above, cases applying HIPAA to the ECPA are particularly relevant to the court's analysis. HIPAA and the GLBA are both federal statutes that do not have a private right of action but are enforced by federal agencies, including the FTC. Moreover, the HIPAA privacy rule and GLBA regulations are both federal regulations that protect individual privacy in sensitive information, including through regulating the disclosure of such information to third parties without consent.

> purpose. Indeed, the use of intercepted communications is often the criminal or tortious purpose.

*Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, at *18-19 (W.D. Wash. Nov. 14, 2024) (holding that disclosure of health information through Tracking Tools satisfies ECPA crime-tort exception). Numerous courts, including courts within this District, concur. *See Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369 at 380 (allegations that defendant installed and configured Tracking Tools in violation of HIPAA sufficient to state ECPA claim); *Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 U.S. Dist. LEXIS 48515, at *21 (W.D.N.Y. Mar. 19, 2024) (same); *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 U.S. Dist. LEXIS 168515, at *14 (S.D.N.Y. Sep. 16, 2024) (same).[5]

***iii. Reach intercepted Plaintiffs' communications with the requisite criminal intent.***

Reach argues that Plaintiffs cannot satisfy the crime-tort exception because its purpose in disclosing Plaintiff's Sensitive Information was not to violate the GLBA, but rather to receive compensation in the form of marketing and advertising services from Google. Mot. at 15-16. This argument is "difficult to square with the statutory text" as the "language of the statute gives no hint that conduct falls outside the reach of the statute if a person acted based on financial motivations." *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273 at *14 (N.D. Ill. Feb. 21, 2025). One court helpfully illustrates the flaws in Reach's reasoning with a few useful hypotheticals:

> A person can have a purpose of committing an act that is criminal or tortious, without having a criminal or tortious purpose. Imagine changing lanes on the highway without looking, and nailing the car in the other lane. The bad driver may have acted with the purpose of committing an act — changing lanes — that was

[5] *See also R.S. v. Prime Healthcare Servs.*, No. 5:24-cv-00330-ODW (SPx), 2025 U.S. Dist. LEXIS 6338, at *20 (C.D. Cal. Jan. 13, 2025) (same); *Eisenhower Med. Ctr.*, 2024 U.S. Dist. LEXIS 67497, at *4 (same); *Mekhail*, 726 F. Supp. 3d at 928 (same); *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 U.S. Dist. LEXIS 219895, at *8 (N.D. Ill. Dec. 11, 2023) (same).

> tortious (because of the lack of ordinary care). But that's different than saying that the driver acted with a tortious purpose.
>
> The other reading would, in effect, import a *mens rea* element into the statute. Congress could have required a showing that the person acted with a criminal or tortious purpose. The text could have covered intercepting a communication 'for a criminal or tortious purpose.' Or, the statute could have applied to intercepting a communication 'for a criminal or tortious purpose to commit a criminal or tortious act.'
>
> But that's not what the text says. The 'act' must be criminal or tortious, but the 'purpose' does not need to be criminal or tortious.
>
> Even if the carve-out required a criminal or tortious purpose, it would be odd to exclude an otherwise criminal or tortious act solely because it was also motivated by financial gain. The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime — it was to make money.

*Id.* at *14-16. Indeed, it is hard to imagine any scenario wherein a company commits an unlawful act simply for the sake of breaking the law. In the vast majority of cases, corporations that commit tortious acts have a financial motive: to obtain wealth (through fraud), to cut costs (by negligently ignoring business regulations or industry standards), to avoid certain expenditures (associated with a costly contractual provision). This case is no different. When Reach installed the Tracking Tools on its Website and configured them to intercept the Sensitive Information of users like Plaintiff, its purpose was, seemingly, to receive compensation in the form of marketing and advertising services from Google (through sharing the intercepted Sensitive Information with an unauthorized third party). In other words, its purpose was to commit an unlawful act: disclosing protected financial information without the authorization required under GLBA. That Reach did so to receive compensation for the disclosed Sensitive Information has no bearing on their liability under the ECPA.

Reach's argument to the contrary that "[m]ost courts analyzing the applicability of the ECPA's crime-tort exception under similar circumstances…have declined to apply it" is incorrect.

*See* Mot. at 16. Indeed, the vast majority of courts, including within this District, concur with Plaintiffs' position. *See, e.g., Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d at 380 (allegations that defendant installed and configured Tracking Tools in violation of applicable statute sufficient to state ECPA claim); *Gay*, 2024 U.S. Dist. LEXIS 168515, at *14 (same); *Kane*, No. 23-CV-6027-FPG, 2024 U.S. Dist. LEXIS 48515, at *21 (W.D.N.Y. Mar. 19, 2024) (same); *A.D v. Aspen Dental Mgmt., Inc*., 2024 U.S. Dist. LEXIS 161090, at *3 (same); *Castillo*, 2024 U.S. Dist. LEXIS (same); *Kurowski v. Rush System for Health*, 2023 U.S. Dist. LEXIS 219895, at *3 (N.D. Ill. 2023) ("Rush III") (same); *Loyola Univ. Med. Ctr*., 2024 U.S. Dist. LEXIS 119995, at *7 (same); *Mayer*, 2025 U.S. Dist. LEXIS 60486 (N.D. Ill. Mar. 31, 2025) (same); *Hartley v. Univ. of Chi. Med. Ctr.*, No. 22 C 5891, 2024 U.S. Dist. LEXIS 78517 (N.D. Ill. Apr. 30, 2024) (same); *Prime Healthcare Servs*., No. 5:24-cv-00330-ODW (SPx), 2025 U.S. Dist. LEXIS 6338, at *20 (C.D. Cal. Jan. 13, 2025) (same); *B.K. v. Eisenhower Med. Ctr.*, 2024 U.S. Dist. LEXIS 67497, at *4 (C.D. Cal. Apr. 11, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 (D. Minn. 2024) (same).

In opposition to this near-consensus, Reach cites only four cases and only one from within this Circuit—*Quicken Loans*—which is inapplicable for the reasons stated in § IV(C)(i), *supra*.

**D. Invasion of Privacy**

***i. California Plaintiffs' Invasion of Privacy claim succeeds under an intrusion upon seclusion theory.***

The vast majority of courts applying California law that have considered this issue have concluded that intrusion upon seclusion is properly plead where plaintiffs allege disclosure of sensitive information through the use of Tracking Tools identical to those used Reach. *See, e.g.*, *Silver v. Stripe Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090, at *15 (N.D. Cal.

July 28, 2021) ("plaintiffs' allegations that [defendant] compiled and disseminated plaintiffs' sensitive [financial] data precludes the Court from finding that plaintiffs have no reasonable expectation of privacy"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 801 (N.D. Cal. 2022) (same as to health information); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023) ("*Cousin II*") ("[T]he Court finds that their interactions on Defendant's website, while 'unauthenticated' or publicly facing, plausibly involve PHI," sufficient to plead invasion of privacy claims); *Doe v. Regents of the Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (same); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *37 (N.D. Cal. Oct. 1, 2024); *Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024) (same). The Court should follow this well-established law and conclude that California Plaintiffs' intrusion upon seclusion claim is well-plead.

***ii. All Plaintiffs' Invasion of Privacy claims additionally succeed under a publication of private facts theory.***[6]

California, Illinois and Missouri courts follow the invasion of privacy standard set forth in the Restatement (Second) of Torts. *Reed v. MRS BPO, L.L.C.*, No. 1:21-CV-04066, 2022 U.S. Dist. LEXIS 156394, at *10 (N.D. Ill. Aug. 30, 2022); *Sofka v. Thal*, 662 S.W.2d 502, 510 (Mo. 1983). A plaintiff has properly alleged publicity where she shows that a matter is communicated "'to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Id*. (quoting Restat 2d of Torts, § 652D). Under this standard, even a

[6] Plaintiff is entirely permitted at this early stage in the litigation to argue that her invasion of privacy claim succeeds under another theory other than intrusion upon seclusion. *See, e.g., Lovgren v. Citizens First Nat'l Bank*, 126 Ill. 2d 411, 415-418 (1989) (finding that while plaintiff unsuccessfully alleged "invasion of privacy based upon the unreasonable intrusion upon the seclusion of another… the facts alleged form the basis of the fourth branch of the privacy…publicity placing another person in a false light").

"statement made in an address to a large audience, is sufficient to give publicity[.]" Restat. 2d of Torts, § 652D.

In their Complaint, Plaintiffs allege that their Sensitive Information was transmitted to a massive, global corporation, Google, not merely for its own use but for use in a mass advertising surveillance apparatus that includes the operators of ***74-percent*** of all web traffic. CAC ¶ 57. Google makes no secret about the reason for this surveillance: all of the information they gather is used to sell targeted advertising to third parties. *Id*. Google "aggregates the user information that it collects from third-party websites into 'advertising profiles' consisting of all of the data that it has collected about a given user" which it then uses to allow "its clients to target internet users" based on that information. *Id.* ¶ 56. In the words of Google's former CEO, these profiles allow advertisers to "know where you are[,] where you've been[,] and what you're thinking about." *Id*. ¶ 59. Courts have found such allegations to properly plead a claim for invasion of privacy under identical circumstances. *See, e.g., In re Facebook, Inc.*, 402 F. Supp. 3d 767, 787 (N.D. Cal. 2019) (plaintiffs pled public disclosure of private facts because they alleged defendant made their internet data "widely available to third parties in a variety of ways; and as a result, third parties were able to develop detailed dossiers on the plaintiffs including information about their locations, their religious and political preferences, their video-watching habits, and other sensitive matters"); *Brahm v. Hosp. Sisters Health Sys.*, No. 23-cv-444-wmc, 2024 U.S. Dist. LEXIS 114827, at *20-21 (W.D. Wis. June 28, 2024) (finding sufficient publicity where plaintiffs alleged that information disclosed through tracking pixel was transmitted to "various technology companies that employ hundreds of thousands of employees who have access to this information").

***iii. Disclosure of Plaintiffs' Sensitive Information was highly offensive.***

***First***, the Sensitive Information alleged by Plaintiffs to have been disclosed is not consistent with routine commercial behavior. Reach cites a number of cases involving "routine commercial behavior" consisting of general web browsing information such as the URLs visited by the plaintiff. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (data involved installation metrics and amount of time spent on certain mobile apps); *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) (data included general browsing information such as pages visited, browser type, and links clicked on retail website); *Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 U.S. Dist. LEXIS 11787, at *7 (N.D. Cal. July 1, 2024) (data involved browsing data such as websites visited and duration of visits). These cases are inapplicable to the present facts. Plaintiffs allege that Reach collected not only their browsing information but also the loan determinations granted by its loan application tool.

***Second***, Plaintiffs' Sensitive Information was inherently private information, the disclosure of which was highly offensive. As Plaintiffs allege in their Complaint, numerous studies have found that a significant portion of Americans withheld financial information even from their significant other. CAC ¶ 106. This desire for financial privacy is particularly acute where, like here, the financial information in question relates to their financial hardships. Indeed, numerous studies have shown that "financial hardship results in feelings of shame and guilt, and that those feelings intensify with the magnitude of an individual's financial struggles." *Id*. Courts have found the same. Indeed, under both California and Illinois law, financial information is deemed inherently private by operation of the state constitution. *See Vinas v. Hayes*, 2018 Cal. Super. LEXIS 25957, *2 ("Personal financial information comes within the zone of privacy protected by article I, section 1 of the California Constitution"); *People v. Jackson*, 116 Ill. App. 3d 430, 435,

(1983) ("there is a constitutional right of privacy in Illinois in a person's bank records" because banking activity "reveals many aspects of [a person's] personal affairs, opinion, habit and associations which provide a current biography of her activities"); *see also BM Real Estate Servs. v. Angel Oak Mortg. Sols., LLC*, No. CV 20-3974-KS, 2020 U.S. Dist. LEXIS 263812, at *11 (C.D. Cal. Aug. 18, 2020) (identification of mortgage applicants "clearly implicates privacy rights").

**E. Plaintiffs' Negligence Claims are Sound.**

***i. Reach had a duty to Plaintiffs.***

Multiple courts have attached a duty to protect sensitive data collected through online Tracking Tools under both California and Illinois law. *See Vishal Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1046 (N.D. Cal. 2025) ("Defendant's alleged lack of reasonable care in handling Plaintiffs' personal information caused foreseeable harm to Plaintiffs"); *Stein*, 2025 U.S. Dist. LEXIS 31273, at *22-23 ("Illinois law imposes a duty on data collectors to maintain reasonable security measures…You collect it, you keep it safe."); *A.J. v. LMND Med. Grp., Inc.*, No. 23-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *9 (N.D. Cal. Oct. 25, 2024); *Aspen Dental Mgmt., Inc.*, 2024 U.S. Dist. LEXIS 161090, at *25; *Loyola Univ. Med. Ctr.*, 2024 U.S. Dist. LEXIS 119995, at *19; *Mayer v. Midwest Physician Admin. Servs., LLC*, No. 23-cv-3132, 2025 U.S. Dist. LEXIS 60486, at *16 (N.D. Ill. Mar. 31, 2025) (same).

Reach cites *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, for the proposition that "Illinois has not recognized an independent common law duty to safeguard personal information." 887 F.3d 803, 817 (7th Cir. 2018). But, in 2017, the Illinois Legislature amended the Personal Information Protection Act ("PIPA") to require "data collectors in possession of the personal information of Illinois residents" to "implement and maintain reasonable security measures to

protect those records from unauthorized access, acquisition, destruction, use, modification, or disclosure." 815 Ill. Comp. Stat. Ann. 530/45. In light of that amendment, numerous courts have found that both *Schuck* and *Cooney v. Chi. Pub. Schs*,[7] the sole case that *Schnuck* relied upon, are no longer good law. *See In re Gallagher*, 631 F. Supp. 3d at 590 ("[PIPA's] amendment calls into question the continued viability of *Schnuck*'s holding that there exists no duty under Illinois law to safeguard personal information"); *Flores v. AON Corp.*, 2023 IL App (1st) 230140, ¶ 23, 477 Ill. Dec. 110, 123 ("Given that the legislature has now created a duty to maintain reasonable security measures under the Information Protection Act, the reasoning of the *Cooney* court no longer applies"); *In re Mondelez Data Breach Litig.*, No. 23 C 3999, 2024 U.S. Dist. LEXIS 97948, at *13 (N.D. Ill. June 3, 2024) (same); *Wittmeyer v. Heartland All. for Hum. Needs & Rights*, No. 23 CV 1108, 2024 U.S. Dist. LEXIS 8803, at *6-7 (N.D. Ill. Jan. 17, 2024) (same); *In re Gallagher Data Breach Ligation*, 631 F. Supp. 3d 573, 590 (N.D. Ill. 2022) (same). Reach's reliance on *Brown v. USA Taekwondo* is even more misplaced. *See* 11 Cal. 5th 204, 216, 276 Cal. Rptr. 3d 434, 443, 483 P.3d 159, 166 (2021). Reach cites *Brown* for the proposition that "none of Plaintiffs' home states' laws impose a blanket legal duty upon website owners to maintain the confidentiality of all information website visitors voluntarily provide on a website" suggesting that it supports this conclusion under "California law," but *Brown* is a case involving sexual assault at a taekwondo dojo and has nothing to do with web privacy.

***ii. Plaintiffs adequately plead the existence of damages that were proximately caused by Reach's breach of its duty to protect their Sensitive Information.***

In arguing that Plaintiffs have failed to allege damages, Reach entirely ignores that "the detriment the plaintiffs suffered was an invasion of their privacy." *In re Facebook, Inc.*, 402 F.

[7] 407 Ill. App. 3d 358, 362, 347 Ill. Dec. 733, 738, 943 N.E.2d 23, 28 (2010).

Supp. 3d 767, 802 (N.D. Cal. 2019). A privacy injury like that suffered by Plaintiffs is a compensable form of damages where a plaintiff's sensitive information is disclosed by the defendant's negligence. *See id.*; *Doe v. N. Cal. Fertility Med. Ctr.*, No. 22-cv-01861-DAD-JDP, 2024 U.S. Dist. LEXIS 12175, at *13 (E.D. Cal. Jan. 22, 2024) ("the court concludes that plaintiff has sufficiently alleged a privacy injury arising from the negligent disclosure of her PHI"); *Toy*, 2024 U.S. Dist. LEXIS 88872, at *12 ("non-economic privacy injury [is] traditionally recognized under the law"). Additionally, Plaintiffs allege that they have suffered "emotional distress and heightened concerns related to the release of Sensitive Information to third parties." ¶ 12. "Allegations of emotional harm, such as these, are sufficient to state a negligence claim under Illinois law, including in the data privacy context." *Loyola*, 2024 U.S. Dist. LEXIS 119995, at *7.

**F. Plaintiffs' Implied Contract Claim is Sound.**

Plaintiffs' implied contract claim is sound. Courts routinely find the existence of an implied contract to protect confidential information entrusted to a defendant as part of a transactional relationship, particularly where that relationship implicates a well-established duty of confidentiality. *See, e.g., In re GE/CBPS Data Breach Litig.*, 2021 U.S. Dist. LEXIS 146020, at *34 (S.D.N.Y. Aug. 4, 2021); *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 384 (S.D.N.Y. 2024). Here, such a duty inarguably existed by virtue of Reach's obligations under the GLBA. Additionally, Reach's argument is premature as the "existence of an implied contract will ordinarily be a question of fact, as it involves an assessment of the parties' conduct and the extent to which such conduct demonstrates a meeting of the minds." *Wallace v. Health Quest Sys.*, No. 20 CV 545 (VB), 2021 U.S. Dist. LEXIS 54557, at *27 (S.D.N.Y. Mar. 22, 2021).

**G. Plaintiffs' Unjust Enrichment Claim is Sound.**

***First***, Reach argues that Plaintiffs' unjust enrichment claim must fail as it is duplicative of their other causes of action. This argument is misplaced. Plaintiffs explicitly plead their unjust enrichment claim in the alternative to their breach of implied contract claim. Complaint ¶ 169. Such alternative pleading is permissible, and not duplicative. *MaxEn Capital Advisors, Ltd. v. Pure Lithium Corp.*, No. 1:24-cv-2231-GHW, 2024 U.S. Dist. LEXIS 190060, at *29 (S.D.N.Y. Oct. 17, 2024).

***Second***, Plaintiffs have adequately alleged that Reach was enriched at their expense by alleging that that the information that they communicated to Reach through their use of the Website had value, and that Reach exchanged their Sensitive Information for marketing and advertising services. *See* CAC ¶¶ 98-102 (discussing monetary value of internet browsing information).

## V. CONCLUSION

For the aforementioned reasons, this Honorable Court should **DENY** Reach's Motion to Dismiss.[8]

Dated: August 8, 2025

Respectfully submitted,

*/s/ Mason Barney*
Mason A. Barney
Tyler J. Bean*
Sonjay C. Singh*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: tbean@sirillp.com
E: ssingh@sirillp.com
**pro hac vice admitted*

***Attorneys for Plaintiffs and the Putative Class***

[8] Plaintiffs do not dispute Reach's arguments as to their claims for Breach of Confidence.