UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ALISON CAMM, NICOLE FLICK, NORMA CISNEROS, KRYSTAL FORBES,** and **ENZA ZITO**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**REACH FINANCIAL, LLC**,<br><br>Defendant. | Case No. 1:25-cv-01921 |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Plaintiffs' opposition does not resolve the deficiencies identified in Reach's Motion to Dismiss ("Motion"). Most notably, Plaintiffs fail to cite even one case involving a disclosure analogous to the one alleged here. Instead, Plaintiffs primarily rely on cases involving the disclosure of personally identifiable **medical** information—a category of information courts have granted heighted protection under the law. Plaintiffs' claims, in contrast, are based on Reach's alleged disclosure of generic URL data and loan application outcomes (*i.e.*, approved or denied), without any accompanying personally identifying information. To date, no court has held that the disclosure of this kind of information is sufficient to subject a website owner to significant civil and even criminal liability. For this reason, and those set forth below and in Reach's Motion, the Court should decline to expand the law and dismiss Plaintiffs' claims with prejudice.[1]

[1] Plaintiffs abandoned several claims pre-Motion, and they now abandon their breach-of-confidence claim. The Court should dismiss Plaintiffs' abandoned claims with prejudice. *Verdi v. City of New York*, 306 F. Supp. 3d 532, 552 (S.D.N.Y. 2018).

# ARGUMENT

## I. Plaintiffs Fail to State a Viable GBL Claim.

### A. Plaintiffs Fail to Identify a Sufficient Nexus Between Their GBL Claim and New York.

Contrary to Plaintiffs' suggestion, Reach is not arguing that the GBL categorically bars non-residents from suing or that the standing inquiry "turn[s]" exclusively on residency. Instead, Reach asserts that Plaintiffs' claim fails because the ***only*** New York connection they allege is visiting a website operated by a New York resident. Under *Wright*, *Wheeler*, and *Chiste*—three in-Circuit opinions Plaintiffs ignore—such allegations are insufficient. *Polk* and *Ward* do not help Plaintiffs because those cases both involved payment processing in New York, and Plaintiffs do not allege any exchange of payments here.

Plaintiffs also futilely rely on *Cruz* to argue that Reach's Terms of Use ("TOU")—which, notably, Plaintiffs did not cite or incorporate by reference in their Complaint[2]—creates a sufficient connection to New York. But neither *Cruz*, nor any of the other cases Plaintiffs cite, support the proposition that New York choice-of-law and forum selection provisions, alone, are sufficient to satisfy the GBL's territoriality requirement. *Contra Ward v. TheLadders.com, Inc*., 3 F. Supp. 3d 151, 168 n.8 (S.D.N.Y. 2014); *see also Jenkins v. Trustco Bank*, 2022 WL 3371131, at *3 (N.D.N.Y. Aug. 16, 2022).

### B. Plaintiffs Do Not Allege Facts to Support Their Omission-Based Theory.

Plaintiffs' argument that the Tracking Tools are deceptive merely because the code associated with them is—like all website code—"invisible" lacks support. Courts in this Circuit

[2] Because the TOU are not properly before the Court, Reach does not address them here. However, should the Court consider them, Reach requests an opportunity to submit supplemental briefing, because the TOU include a binding arbitration provision and incorporate Reach's Privacy Policy, giving rise to independent grounds for dismissal.

have made clear that to support an omission-based GBL theory "it is not sufficient for the plaintiffs to point to the omission alone." *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 529 (S.D.N.Y. 2003). Plaintiffs "must also show why the omission was deceptive." *Id.* They failed to do so.

In any event, to support an omission-based claim, Plaintiffs must also allege facts sufficient to establish that Reach's use of the Tracking Tools was information "solely within [Reach's] possession or that a consumer could not reasonably obtain such information." *Id*. Plaintiffs admit that the code at issue is not solely within Reach's possession. Compl. ¶ 85. And their assertion that "typical internet users" are unable to ascertain whether Tracking Tools are being used on Reach's (or any other) website is a conclusory allegation lacking factual support. *See Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *14 (S.D.N.Y. July 9, 2014) (dismissing plaintiff's GBL claim for failing to allege "facts to demonstrate that he could not 'reasonably obtain' the unlisted beverage prices").

**C. Plaintiffs Do Not Allege Injury.**

Although pecuniary harm is not required to establish a cognizable injury under the GBL, Plaintiffs must allege ***some*** injury. Plaintiffs cannot create an injury by arbitrarily defining the allegedly intercepted information as "sensitive," especially here, where the disclosure of such information does not give rise to a plausible privacy violation.

Plaintiffs' attempt to distinguish the holding in *Mount* is unavailing. The court in *Cohen v. Casper Sleep* expressly rejected Plaintiffs' narrow reading of that case. 2018 WL 3392877, at *8 (S.D.N.Y. July 12, 2018). The *Cohen* Court emphasized *Mount's* holding that a plaintiff must allege "'confidential, individually identifiable information—such as medical records or a Social Security number' has been collected" to establish a cognizable GBL injury. *Id.* (citing *Mount*, 634 F.App'x. 32, 35 (2d Cir. 2017)). Plaintiffs have not alleged the collection of any confidential, individually identifiable information here.

In any event, Plaintiffs' claim fails because they rely on Reach's unauthorized collection of their data as both the allegedly deceptive act and Plaintiffs' claimed privacy injury. *See Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (holding that injury must be separate and distinct from the alleged deception to state GBL claim).

## II. California Plaintiffs' CIPA Claim Fails.

Plaintiffs argue they satisfied the first element of their aiding and abetting CIPA claim (*i.e.*, that Google itself violated CIPA) by alleging that "the defendant intentionally procured Google Tracking Tools and installed them on its website[.]" Opp. at 9. But the sole case they cite as support is *M.G. v. Therapymatch*, in which the court accepted conclusory allegations that Google violated CIPA without analysis or authority. 2024 WL 4219992 (N.D. Cal. Sep. 16, 2024). By contrast, Reach cited multiple well-reasoned decisions holding that far more is required to satisfy the first element of a derivative CIPA claim, *see* Mot. at 9, none of which Plaintiffs refuted or distinguished.

Plaintiffs fare no better on the knowledge and concerted-action elements. They point to allegations that: (1) Google's Tracking Tools collect user data for advertising; and (2) Reach installed those tools to obtain advertising services. From this, they leap to the conclusion that Reach "knew" Google was violating CIPA and "furthered" that violation. But this reasoning simply repackages the same conclusory assertions other courts have rejected. *See* Mot. at 10. Moreover, the cases Plaintiffs cite to the contrary ignored the substantial and growing body of authority holding that CIPA requires specific intent and actual knowledge. *Id.*

## III. Plaintiffs' ECPA Claim Fails.

### A. The Alleged GLBA Violation Does Not Constitute a Crime or Tort.

Plaintiffs' recitation of what conduct the GLBA regulates misses the point. To invoke the ECPA's crime-tort exception, Plaintiffs must establish that Reach committed either a **crime** or **tort**. Unlike in cases where the plaintiffs invoked the crime-tort exception based on an alleged

violation of Section 1320d-6 of HIPAA—a provision that expressly carries criminal penalties—Plaintiffs here have not cited any legal authority to support a finding that a violation of Section 6802 of the GLBA, as alleged in the Complaint (¶¶ 91–92), amounts to a crime.[3] Nor have they cited any authoritative source establishing that Reach's alleged violation of Section 6802 is an actionable tort. *Contra* Mot. at 17; *see also, e.g.*, *USAA Fed. Sav. Bank v. PLS Fin. Servs., Inc.*, 340 F. Supp. 3d 721, 726 (N.D. Ill. 2018) ("[I]t is well-recognized that the GLBA does not provide a private right of action to enforce its rules"); *Am. Fam. Mut. Ins. Co. v. Roth*, 2005 WL 3700232, at *6–9 (N.D. Ill. Aug. 5, 2005) ("[A]ll the courts that have considered the question of the existence of an implied claim or cause of action [under the GLBA] have concluded that none exists"). For this reason, Plaintiffs' reliance on cases in which courts have allowed ECPA claims to proceed based on violations of HIPAA's privacy provisions is misplaced. *Cf. Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (rejecting reliance on HIPAA cases as a basis for crime-tort exception where plaintiff sought to establish crime or tort based on a different privacy statute); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *6 (W.D. Wash. Nov. 14, 2024)

---

[3] Neither the FTC nor the CFPB has authority to impose criminal penalties for violations of the GLBA's privacy notice requirement. *See, e.g.*, *Lemanski v. Rev Grp., Inc.*, 2019 WL 5455416, at *7 (E.D. Mich. Oct. 24, 2019) (holding that "[t]he FTC does not have the authority to initiate or prosecute criminal cases" and "cannot impose criminal sanctions"); 12 U.S.C.A. § 5564 (reflecting that CFPB's direct enforcement authority is limited to commencing civil action to impose civil penalties). Although both agencies can refer potential "criminal regulatory offenses" to the DOJ for prosecution, *see, e.g.*, 12 U.S.C.A. § 5566, those offenses only arise from violations of "Federal regulations **enforceable by criminal penalty**." CFPB, *Guidance on Referrals for Potential Criminal Enforcement*, available at https://public-inspection.federalregister.gov/2025-11982.pdf (emphasis added). While the GLBA provides that a violation of Section 6821 can carry criminal penalties, *see* 15 U.S.C. § 6823, no such criminal penalties are ascribed for violations of Section 6802—the provision Plaintiffs claim Reach violated here—or any other provision of Title 15, Chapter 94, Subchapter I. Thus, a violation of that subchapter's provisions does not constitute a crime.

(distinguishing non-health related ECPA claims from those "involv[ing] health data that could implicate HIPAA").

### B. The Alleged Crime or Tort and ECPA Violation Are Not Sufficiently Independent.

Plaintiffs argue there is no overlap between the conduct giving rise to Reach's alleged violations of the GLBA and of the ECPA. However, the Complaint indicates otherwise. *See* Compl. ¶¶ 95, 196–97. Both violations are the result of Reach allegedly disclosing Plaintiff's information to Google without authorization. Because, under Plaintiffs' theory, Reach's violation of the ECPA would necessarily result in violation of the GLBA, the two claims are inextricably intertwined and preclude application of the crime-tort exception. *See* Mot. at 15, 17.

Attempting to overcome this deficiency, Plaintiffs describe what they claim is a distinction between Reach's unauthorized "disclosure" of information to Google, and Google's unauthorized "interception" of that information. But this supposed dichotomy between the act of disclosure and interception is entirely semantic and inconsistent with Plaintiffs' overarching theory of ECPA liability—under which Reach's disclosure to Google, and Google's interception, are one in the same.

### C. Plaintiffs Failed to Allege the Requisite Intent.

Hoping to sidestep their failure to allege that Reach disclosed Plaintiffs' communications to Google with the intent to violate the GLBA (or any other law), Plaintiffs argue that Reach cannot shield itself from ECPA liability just because their Complaint affirmatively alleges that Reach's use of the Tracking Tools was motivated by legal business aims. But this misconstrues—and fails to actually respond to—Reach's argument. Reach does not argue that it is shielded from liability merely because Plaintiffs alleged that one of Reach's purposes for using the Tracking Tools was commercial or financial; rather, that Plaintiffs have alleged ***only that*** Reach acted for such non-

criminal purposes, and not "***for the purpose of***" committing a crime or tort, let alone with the requisite "primary motivation" of injuring Plaintiffs. *See* Mot. at 14.

Reach cited numerous cases analyzing the applicability of the crime-tort exception ***under similar circumstances*** and declining to apply it. Rather than address those cases head on, Plaintiffs point to a series of cases involving materially different circumstances, namely the disclosure of patients' medical information by medical providers, which are inapposite. Tellingly, Plaintiffs could not cite a single case involving a disclosure analogous to the one alleged here—specifically, the disclosure of non-personally identifiable URL data and loan determination outcomes.

## IV. Plaintiffs' Invasion of Privacy Claim Fails.

Plaintiffs argue that "the vast majority of courts applying California law" have found intrusion-upon-seclusion claims plausible where defendants allegedly disclosed information through Tracking Tools. Opp. at 15. The cases Plaintiffs cite are not nearly so sweeping, and regardless, they are materially distinguishable.

First, nearly every case Plaintiffs cite involved disclosure of ***medical information***—a category of data to which courts have applied a heightened level of protection. By contrast, Plaintiffs here allege disclosure of loan outcomes—hardly comparable in sensitivity. Indeed, in *Regents*, one of Plaintiffs' own authorities, the court drew a sharp line between the non-offensive disclosure of "physical tracking, the name of plaintiff's bank, and phone applications plaintiff used" and the highly offensive disclosure of "[p]ersonal medical information," which is "understood to be among the most sensitive information that could be collected about a person." *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023); *see also St. Aubin v. Carbon Health Techs.*, Inc., 2024 WL 4369675, at *1 (N.D. Cal. Oct. 1, 2024) (holding

that disclosure of medical information is "more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive'" compared to other types of information).

The only non-medical cases Plaintiffs cite—*Silver* and *Shah*—underscore the weakness of their claim. In *Silver*, the defendant allegedly disclosed plaintiffs' browsing histories, financial data, device information, and purchase activities, compiled that data into risk scores, and distributed the scores broadly to merchants. 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021). In *Shah*, plaintiffs alleged disclosure of employment information, bank account details, and credit card eligibility. 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025). Even then, the court held the disclosure was not an "egregious breach of social norms." *Id.* The disclosure alleged here pales in comparison.

Second, several of Plaintiffs' cases involved claims against ***third parties*** to the plaintiffs' communications; not the intended recipient, as Reach undisputedly was. And in the cases Plaintiffs cited involving claims against the website owner, the courts never squarely addressed whether an intended party to a communication could intrude upon the plaintiff's privacy; thus, those cases are inapposite.

Third, the courts in several of Plaintiffs' cited cases concluded that the defendant's data disclosure was highly offensive because the defendant had privacy policies in place promising not to disclose the very information it allegedly disclosed. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 801 (N.D. Cal. 2022) (noting that "Meta's policies forbid the transmission of health-related information, which the Ninth Circuit has found to be relevant in the 'highly offensive' inquiry"); *St. Aubin*, 2024 WL 4369675 at *1. No such allegations exist here.

In contrast to the distinguishable cases Plaintiffs rely upon, Reach cited numerous cases in which courts dismissed invasion of privacy claims under circumstances similar to those alleged here. Plaintiffs have, again, made no meaningful attempt to challenge any of those cases.

Recognizing their pleaded claim's deficiencies, Plaintiffs attempt to use their opposition to amend the claim. Under binding Second Circuit precedent, "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss," and thus Plaintiffs' newfound publicity of private facts claim should not be considered. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

In any event, Plaintiffs' new claim is legally deficient for many of the same reasons their intrusion upon seclusion claim fails, as forth above, and also because Plaintiffs have not plausibly pleaded that their information was publicly disclosed. A "public disclosure" must be "widely published and not confined to a few persons or limited circumstances." *Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 649 (1994). Mere disclosure to a third party is not enough; "publicity" requires communication to the public at large. *Id*. The public disclosure Plaintiffs rely on here does not rise to the level required to state a claim.[4]

## <u>V. Plaintiffs' Negligence Claim Fails.</u>

Plaintiffs concede that Missouri law does not support a negligence claim under the facts alleged. As to California and Illinois, Plaintiffs argue that multiple courts "have attached a duty to protect sensitive data collected through online Tracking Tools." Opp. at 19. As support, Plaintiffs rely almost entirely on cases involving the disclosure of a patient's sensitive medical information by the patient's medical provider. Indeed, the Illinois cases Plaintiffs cite each found that the

[4] To the extent Plaintiffs' amended claim is grounded in ***Google's*** alleged subsequent dissemination of Plaintiffs' information, such a claim would not lie against Reach.

defendants owed a duty to plaintiffs under the Illinois Personal Information Protection Act (PIPA), which imposes requirements on data collectors to provide certain safeguards for "personal information," including medical information. *See* 815 ILL. COMP. STAT. ANN. 530/5; *see also*, *e.g.*, *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *7 (N.D. Ill. July 9, 2024). The information Plaintiffs claim was disclosed here, in contrast, does not fall within the purview of PIPA. Thus, no duty to safeguard such information exists.

Plaintiffs' attempt to distinguish *Cmty. Bank of Trenton* is unpersuasive. The Seventh Circuit decided that case in 2018—after PIPA had been amended. In any event, the cases Plaintiffs cite establish, at most, that PIPA's amendment created a duty to protect certain enumerated data points defined as "personal information." It did not create a duty for data collectors to safeguard all information—and certainly not any of the information Plaintiffs allege that Reach disclosed here.

Plaintiffs' attempt to dismiss *Brown v. USA Taekwondo*—because it is not a "web privacy" case—misses the point. Reach cited *Brown* for its foundational principle: "Duty is not universal; not every defendant owes every plaintiff a duty of care." 483 P.3d 159, 164 (2021). In other words, Plaintiffs cannot merely proclaim a duty exists to satisfy that element of their negligence claim. They must point to a specific duty that exists according to each state's law under the circumstances they allege. They have failed to do that here.

As related to the damages element of their claim, Plaintiffs cite *Facebook Consumer Privacy* for the proposition that an "invasion of privacy," alone, can establish damages. Opp. at 20–21. Not so. In that case, the court held, in the context of a breach of contract claim, that even if the alleged invasion of privacy did not cause compensatory damages, the claim could survive based on plaintiffs' potential to recover nominal damages. A negligence claim, in contrast, requires

actual damages. Nominal damages are not recoverable. *See, e.g., Duarte v. Zachariah*, 22 Cal. App. 4th 1652, 1661–62 (1994). Here, Plaintiffs have not alleged that they suffered actual damages.

Plaintiffs' other cases are also unavailing. *Doe v. Northern California Fertility Medical Center* relied solely on *Ambry* to hold that the plaintiff had adequately alleged damages to support a negligence claim. 2024 WL 246178, at *4 (E.D. Cal. Jan. 23, 2024). However, the *Ambry* plaintiffs alleged they suffered concrete damages from a data breach. 567 F. Supp. 3d 1130, 1140 (C.D. Cal. 2021); *cf. Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263, at *4 (N.D. Cal. Mar. 19, 2024) ("[T]he mere misappropriation of personal information does not establish compensable damages" (internal citations and quotations omitted)). Plaintiffs allege no concrete injuries here.

## VI. Plaintiffs' Implied Contract Claim Fails.

Plaintiffs rest their opposition to Reach's implied contract argument on a broad, unsupported proclamation about what courts "routinely find" and two cases—both involving plaintiffs who had a ***special relationship*** with the defendants, either as employee/employer or union/member—that are unpersuasive because no such special relationship exists here.

Plaintiffs' argument that Reach owed them contractual duties under the GLBA also falls short. The GLBA is not a contract, and accepting Plaintiffs' theory would transform alleged violations of the GLBA into a private right of action—a result every court to consider it has rejected. *See USAA Fed. Savs. Bank*, 340 F. Supp. 3d at 725–26 (refusing to allow claims based on alleged violations of the GLBA); *see also Beaman v. Bank of Am., N.A.*, 2024 WL 3219224, at *18 (D.N.J. June 28, 2024) (same).

## <u>VII. Plaintiffs' Unjust Enrichment Claim Fails.</u>

Plaintiffs do not dispute that their unjust enrichment claim seeks the same relief as their statutory claims or refute Reach's line of authority holding that dismissal is warranted where unjust enrichment merely duplicates other "alternative theory" claims. *See* Mot. at 27.

They rely, instead, on *MaxEn Capital*. There, the court permitted unjust enrichment to be pled in the alternative to a breach-of-contract claim because the parties had a bona fide dispute over whether a contract existed, and if no contract existed, the plaintiff would be left with no remedy. 2024 WL 4520062, at *9 (S.D.N.Y. Oct. 17, 2024). Here, in contrast, Plaintiffs have asserted multiple independent statutory claims, each of which provides an adequate remedy at law.

In any event, the only information Plaintiffs allege was shared consisted of data Reach itself generated—generic URL information and loan application outcomes. Plaintiffs do not explain how disclosure of this internally-generated data diminished the value of their communications with the Website or unjustly enriched Reach at their expense.

## CONCLUSION

For these reasons and those set forth in Reach's Motion, Reach respectfully requests dismissal of Plaintiffs' claims, with prejudice.

DATED: September 5, 2025

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: */s/ Gregory P. Szewczyk*
Gregory P. Szewczyk (SBN 4795464)
J. Matthew Thornton (*pro hac vice*)
Alexia C. Chapman (*pro hac vice*)

*Attorneys for Defendant*

## WORD COUNT CERTIFICATION

I, the undersigned, hereby certify that this Memorandum contains 3,483 words—inclusive of footnotes and exclusive of any captions, indexes, tables, signature blocks, and required certificates—and complies with Local Rule 7.1 of the Southern District of New York. In preparing this certification, I relied on the word count of the word-processing system used to prepare this document.

DATED: September 5, 2025

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: *_/s/ Alexia C. Chapman_*
Gregory P. Szewczyk (SBN 4795464)
J. Matthew Thornton (*pro hac vice*)
Alexia C. Chapman (*pro hac vice*)

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of September, 2025, I directed a true and correct copy of the foregoing to be served via the electronic filing system upon the following counsel of record:

Sonjay Singh
Siri & Glimstad LLP
C/O Sonjay Singh
745 Fifth Avenue
Suite 500
New York, NY 10151
646-829-1389
Email: ssingh@sirillp.com

Mason Adams Barney
Siri & Glimstad LLP
745 Fifth Avenue
Suite 500
New York, NY 10151
212-532-1091
Email: mbarney@sirillp.com

BY: *_/s/ Stephanie Agabo_*
Stephanie Agabo
*On behalf of Defendant, Reach Financial LLC*